IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TINA TODARO, | ) | |
| 12908 Oakview Boulevard | ) | Case No.: |
| Garfield Heights, OH 44125 | ) | |
| | ) | Judge: |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR DECLARATORY** |
| v. | ) | **RELIEF, INJUNCTIVE RELIEF, AND** |
| | ) | **MONEY DAMAGES (UNFAIR DEBT** |
| REIMER, ARNOVITZ, CHERNEK & | ) | **COLLECTION PRACTICES)** |
| JEFFREY CO., L.P.A. | ) | |
| c/o Dennis Reimer, Statutory Agent | ) | |
| 2450 Edison Boulevard | ) | |
| Twinsburg, OH 44087 | ) | |
| | ) | |
| DOUGLAS HAESSIG | ) | |
| 30455 Solon Road | ) | |
| Solon, OH 44139 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Tina Todaro ("Plaintiff"), by and through counsel, hereby submits her Complaint to this Court against Defendants Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. ("Defendant RACJ"), and Douglas Haessig, Esq. ("Defendant Haessig") (collectively "Defendants"), and avers and alleges as follows:

## JURISDICTION AND VENUE

1. At all times relevant, Plaintiff lived and resided at 12908 Oakview Boulevard, Garfield Heights, OH 44125 ("the property").

2. Upon information and belief, Defendant Haessig is an attorney licensed in the State of Ohio, and lives and resides in Cuyahoga County, Ohio.

3. At all times relevant Defendant RACJ was and is a legal professional association, licensed as a corporation, registered under the laws of the State of Ohio with principal place of business in Solon, Ohio.

4. At all times relevant, and upon information and belief, Defendant Haessig is an officer, director, owner, member, manager, and/or agent, or was otherwise in the control of Defendant RACJ.

5. Defendant Haessig is engaged in the business of consumer debt collecting on behalf of RACJ and Huntington Bank and/or The Huntington National Bank ("the Bank"), which foreclosed on the property.

6. At all times relevant herein, Defendant Haessig was acting within the scope of his agency for RACJ.

7. Defendant RACJ is in the business of collecting consumer debts including the specific debt at issue in this case.

8. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

9. This case presents a question under Federal Law, specifically Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and therefore this Court has subject matter jurisdiction.  Also, this Court has pendent jurisdiction of the abuse of process claim under 28 U.S.C. § 1367.

10. Because the parties are all located within the Northern District of Ohio, this Court has personal jurisdiction over them, and venue is also proper.

## I.  FACTS COMMON TO ALL COUNTS

11. Defendant RACJ is a debt collection company, which refers to itself as a "collection agency."

12. Defendant Haessig is a debt collector both through his work in RACJ and also as an attorney for RACJ and the Bank.

13. Defendants attempted to collect consumer debts related to the residential mortgage loan between the Bank and Plaintiff related to the property.

14. On or about September 24, 2015, Defendants, through their agent and employee Edward G. Bohnert, sent a letter and written communication to Plaintiff. A true and accurate copy of this letter and communication is attached hereto as Exhibit 1.

15. In the September 24, 2015 letter, Defendants failed to identify themselves as debt collectors, and failed to state that any information given to them would be used for the purpose of debt collection.

16. Defendants represented the Bank in a foreclosure action that was and is pending before the Cuyahoga County Court of Common Pleas ("Common Pleas Court"), Case Number CV-15-840048. See:  http://cpdocket.cp.cuyahogacounty.us/Search.aspx.   It is requested that this Court take judicial notice of the docket under Federal Evidence Rule 201.

17. On or about January 5, 2016, Defendants sent a letter captioned NOTICE TO VACATE PROPERTY to Plaintiff. A true and accurate copy of this letter is attached as Exhibit 2.

18. Plaintiff received Exhibit 1 and Exhibit 2.

19. In their January 5, 2016 letter, Defendants requested that Plaintiff either vacate her home immediately or contact Defendants to discuss occupancy, but never stated that this communication was from a debt collector or that information given would be used for the purpose of debt collection.

20. In 2015, Defendants caused to be issued to Plaintiff a writ of possession to evict Plaintiff from her residence after her home was sold at a sheriff sale. This writ of possession was

issued by the Common Pleas Court but, upon request by Plaintiff, the Court stayed execution of the writ of possession and eviction for 90-days beginning on or around February 17, 2016.

21. The Common Pleas Court ordered that: "SAID WRIT SHALL NOT REISSUE FOR 90 DAYS OR PRIOR TO MAY 11, 2016. IT IS SO ORDERED. NOTICE ISSUED."

22. The stay was requested by Plaintiff, and issued by the Common Pleas Court, due to severe health and respiratory concerns, illness, and/or disease from which she was suffering.

23. Defendants did not agree with this order or decision of the Common Pleas Court, so they left on the door of the property, on or about February 29, 2016, a NOTICE TO LEAVE PREMISES, a true and accurate copy of which is attached hereto as Exhibit 3, with some additional handwriting from Plaintiff.

24. This notice was written and/or signed by Defendants, and it informed Plaintiff that she had to leave her home before March 3, 2016, otherwise evictions proceedings would be initiated against her to remove her from the property.

25. Defendants never disclosed in their notice attached as Exhibit 3 that they were debt collectors attempting to collect a debt.

26. Defendants took this action against Plaintiff in order to knowingly and intentionally coerce her and/or illegally circumvent the order of stay in the Common Pleas Court from removing her from the property.

27. On or about March 7, 2016, Defendants filed an eviction action for forcible entry and detainer against Plaintiff in the Garfield Heights Municipal Court ("Municipal Court"), despite the fact that: (1) the Common Pleas Court had ordered that the eviction writ of possession would not re-issue before May 11, 2016; and (2) Defendants had already sought this exact same relief and invoked the jurisdiction of the Common Pleas Court.

28. Defendants attached to their eviction complaint in the Municipal Court an exhibit titled NOTICE TO LEAVE PREMISES, but that notice contained an additional signature and modified handwriting when compared with the one actually served on Plaintiff.  Defendants claimed their altered copy was the one served on Plaintiff.

29. On or about March 8, 2016, the Municipal Court, when it was made aware of the stay issued and ordered by the Common Pleas Court, issued an order for Defendants to show cause as to why the eviction proceedings should continue in the Municipal Court, putting Defendants on notice as to the improper request they were making.

30. On or about March 14, 2016, Defendants responded to the Municipal Court, and among other things, stated that they "should be able to proceed with the Complaint for Writ of Restitution filed in the Municipal Court irrespective of the 90 day stay granted by the Common Pleas Court." Defendants acknowledged that they knew about this issue, that there was apparently a problem with this issue, and that they would pursue this course of conduct "irrespective" of the severity of the issue.

31. The March 14, 2016 writing submitted by Defendants to the Municipal Court was signed by Defendant Haessig and filed under his name and the name of Defendant RACJ.

32. Based on Defendants' response, Municipal Court Judge Deborah J. Nicastro ("Judge Nicastro") permitted the eviction action to proceed to trial before Magistrate Judge Stanley E. Stein ("Magistrate Judge Stein") on April 4, 2016.

33. After receiving this news, Plaintiff frantically searching for assistance, was confused about how this matter was proceeding, and was hospitalized at the Ahuja Medical Center on March 25, 2016.

5

34. As a direct and proximate result of the NOTICE TO LEAVE PREMISES and the eviction action in Municipal Court, Plaintiff became confused as to her rights and whether the stay would be observed, which caused Plaintiff to suffer increased stress from speeding up her move-out, increase anxiousness, and embarrassed her as it was placed on her door which was publicly viewable.

35. As a direct and proximate result of this stress and quickened physical effort to move out in light of the NOTICE TO LEAVE PREMISES, Plaintiff was hospitalized with exacerbated respiratory issues, was placed on oxygen, and suffered more stress, mental anguish, and embarrassment as a result of the harassment from Defendants.

36. Plaintiff left the hospital before she believed she was finished treating in order to attend her scheduled trial date of April 4, 2016 in the Municipal Court, because she was required to attend, did not want to be evicted by default, and her motion for a continuance was denied.

37. At the April 4, 2016 trial before Magistrate Judge Stein, Defendant RACJ, through an associate attorney and agent of Defendants, appeared with their client, the Bank, to maintain their request for an eviction of Plaintiff.

38. Magistrate Judge Stein found, on the record, that the Municipal Court had no jurisdiction to hear to decide the eviction proceeding filed and maintained by Defendants, in light of the stay issued by the Common Pleas Court. Magistrate Judge Stein denied the eviction request and dismissed the matter.

39. On or about April 26, 2016, Judge Nicastro entered a Judgment Entry adopting Magistrate Judge Stein's decision.

40. After the hearing on April 4, 2016, Defendants' agent, another attorney with RACJ, followed Plaintiff to the elevator and continued to attempt to speak with her even though she and

another person repeatedly requested that they be left alone, which caused her additional distress and mental anguish.

41. Defendants' agent then attempted to and stated that he apologized for the wrongful eviction attempt and stated they would not attempt to evict Plaintiff again until after the Common Pleas Court stay had ended.

42. On April 29, 2016, Plaintiff filed a motion with the Common Pleas Court requesting an additional 90-day stay based on: Defendants' conduct in filing their proceedings in Municipal Court before the end of the Common Pleas Court's original stay, and on the additional physical distress, general stress, mental anguish, and embarrassment that Defendants' conduct in the Municipal Court proceedings caused to Plaintiff.

43. On May 12, 2016, the Common Pleas Court granted Plaintiff's motion.

44.    In her judgment entry,, Judge Maureen Clancy ("Judge Clancy") stated:

> ON FEBRUARY 17, 2016 THIS COURT ISSUED AN ORDER PREVENTING THE EVICTION UNTIL AFTER MAY 11, 2016. NEVERTHELESS, [HUNTINGTON NATIONAL BANK] PROCEEDED TO GARFIELD MUNICIPAL COURT AND FILED FOR EVICTION ON MARCH 7, 2016. THIS COURT IS PERPLEXED BY THE ATTEMPT TO SIDESTEP THE ORIGINAL GRANT FOR EXTENSION ISSUED BY THIS COURT.

45. Upon information and belief, this is a pattern and practice and habitual course of conduct in which Defendants engage—when a stay is issued on execution of a writ of restitution or possession, *i.e.* eviction, Defendants seek to circumvent such ordered stays by filing eviction actions in various municipal courts throughout Ohio.

46. Upon information and belief, this is a pattern and practice and habitual course of conduct in which Defendants engage—using standard form letters and notices and sending these letters and notices, including the Notice to Vacate, Notice to Leave Premises, and other notices without announcing that they are communications from a debt collector, without announcing

7

that information provided will be used for that purpose, and without stating that the letters are attempts to collect upon a debt.

47. Upon information and belief, the letters and notices attached hereto as <u>Exhibit 1</u>, <u>Exhibit 2</u>, and <u>Exhibit 3</u> are routinely-used documents of Defendants which Defendants use in their debt collection activities with consumer debtors and related to consumer debt collection activities.

## <u>COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>

48. Plaintiff reincorporates and re-alleges all the foregoing allegations as if fully rewritten herein.

49. Plaintiff is a "consumer" within the meaning of 15 U.S.C. §§ 1692a(3) and 1692c(d) as she entered into a mortgage agreement and lending agreement to purchase the property in which she lived, which was the subject matter of the collection attempts and foreclosure and eviction attempts.

50. The Defendants are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6) as they are in the business of regularly collecting consumer debts from individuals who default on mortgages from the Bank on their personal homes, as well as other consumer debts and mortgage collections.

51. Defendants, falsely and improperly threatened Plaintiff with a second and early eviction action after a stay had been ordered in violation of 15 U.S.C. § 1692d because they engaged in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt.

52. Defendants falsely and improperly threatened Plaintiff with a second and early eviction action after a stay had been ordered in violation of 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect debt.

53. Defendants' (1) service of the Notice to Leave Premises, and (2) filing and maintaining an eviction proceeding before the Municipal Court after a stay had been ordered was in violation of 15 U.S.C. § 1692e because they represented to Plaintiff that she would be evicted by them before May 11, 2016 when they could not legally take any such action, and they used false and deceptive means to collect or attempt to collect a debt.

54. Defendant RACJ, in its various letters (Exhibits 1 and Exhibit 2) to Plaintiff, violated 15 U.S.C. § 1692e(11) by failing to identify itself as a debt collector and failing to state that the written communications are from a debt collector.

55. Defendants in their NOTICE TO LEAVE PREMISES, attached as Exhibit 3, failed to identify or disclose on that communication that it was a communication from a debt collector and that information obtained would be used for that purpose, and therefore violated 15 U.S.C. § 1692e(11).

56. All actions engaged in by Attorney Haessig and his associate counsel who appeared at the Municipal Court were in their capacity as an attorney for, owner of, or agent of, RACJ, and in an effort to collect a debt on behalf of RACJ and themselves for the Bank.

57. Defendants' actions in violation of the FDCPA were committed knowingly.  Defendants knew: (1) what letters they use and employ: (2) that they served a NOTICE TO LEAVE PREMISES against Plaintiff; (3) that they filed a second eviction action against her in the Municipal Court; (4) about the Common Pleas Court's stay as they referenced it in their subsequent court filing in Municipal Court; and (5) about the impropriety of their eviction

9

action as they failed to attempt to justify it at the April 4, 2016 hearing and apologized for it immediately thereafter.

58. Defendants' conduct is not the consequence of any bona fide error.

59. As a direct and proximate result of Defendants' conduct, Plaintiff suffered economic and noneconomic damages (including emotional and mental anguish, stress, and embarrassment), retained an attorney, and brought this action to vindicate her rights.

## COUNT II – ABUSE OF PROCESS

60. Plaintiff reincorporates and re-alleges all the foregoing allegations as if fully rewritten herein.

61. Defendants instituted the legal proceedings against Plaintiff in the Municipal Court in proper form by filing a forcible entry and detainer action in the Municipal Court.

62. Defendants had probable cause for seeking the eviction and filing an action to evict Plaintiff—she was in possession of a home which was sold to Defendants' client at the November 15, 2015 sheriff sale.

63. Defendants perverted the proceedings in the Municipal Court to attempt to accomplish something that they could not accomplish through the proceedings—namely to pressure the immediate eviction of Plaintiff from the property, and coerce her to move out and to speed up her move out despite being given a stay from the Common Pleas Court, and some more time to vacate the property.

64. Plaintiff prevailed on Defendants' claims in the Municipal Court. The Municipal Court held that Defendants could not accomplish through the Municipal Court the goals which they sought.

65. As stated by the Magistrate Judge Stein and Judge Nicastro, Defendants attempted to accomplish through use of the Municipal Court that which it was powerless to order because it lacked jurisdiction and the Common Pleas Court had already decided the matter.

66. As stated by the Judge Clancy, Defendants attempted to sidestep the Common Pleas Court and accomplish something that they could not accomplish through the proceedings—namely: to pressure the immediate eviction of Plaintiff from her home, and coerce her to move out and to speed up her move out despite being given a stay from the Common Pleas Court.

67. Plaintiff, as a proximate and direct result of this conduct of Defendants, was damaged by suffering ill-health effects from this coercive abuse of process and also through having to leave the hospital prior to completing treatment, travelling to the Municipal Court, incurring great stress, embarrassment, and enduring harassment, as well as paying out of pocket court costs for filings.

68. At Defendants acted with actual malice when they pursued and attempted to coerce the early eviction of Plaintiff. Defendants were motivated by their hatred, ill will, or a spirit of revenge against Plaintiff who had just recently obtained a 90-day stay on her eviction, and Defendants and the Bank wanted to get revenge against her for doing so.

69. Defendants acted with conscious disregard for the rights and safety of Plaintiff, as they were aware of both her medical issues, the stress she was enduring, and her right to remain at the property longer according to the Common Pleas Court order. This conscious disregard created a great probability of causing substantial harm to Plaintiff, including homelessness, stress, anguish, embarrassment, harassment, cost, and negative impact on her respiratory health.

11

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court grant her the following relief:

a. Enter preliminary and permanent injunctions enjoining Defendants from applying in the future the customs or policies complained of herein against the Plaintiffs and other consumers in the State of Ohio.

b. Judgment against Defendants, jointly and severally, for at least $75,000 in actual economic, consequential, direct, and non-economic damages to be proven, and an additional $150,000 in punitive damages proven.

c. All damages permitted by the FDCPA to the Plaintiff from Defendants, including economic, non-economic, and other damages, and attorneys' fees, as well as all relief permitted by 15 U.S.C. § 1692k.

d. The costs of this action, and pre-judgment and post-judgment interest.

e. Grant Plaintiff such other relief as is proper, just, and equitable.


                                                        Respectfully Submitted,


*/s/ Daniel J. Myers*                                   */s/ Edward Icove*
Daniel J. Myers, Esq. (0087909)                         Edward A. Icove (0019646)
Myers Law, LLC                                          Icove Legal Group, Ltd.
600 East Granger Road, Second Floor                     Terminal Tower, Suite 627
Cleveland, OH 44131                                     50 Public Square
P:  216-236-8202                                        Cleveland, OH 44113
F:  216-674-1696                                        216-802-0000; Fax: 216-802-0002
E:  DMyers@MyersLawLLC.com                              ed@icovelegal.com
Counsel for Plaintiff                                   Counsel for Plaintiff