IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TINA TODARO | Case No.: 1:16 CV 01480 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| v. | |
| REIMER, ARNOVITZ, CHERNEK & JEFFREY CO., L.P.A., *et al*., | **BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Doc.  10)** |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Tina Todaro ("Plaintiff") hereby opposes the motion to dismiss filed by Defendant Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. ("Defendant Law Firm"), and Defendant Douglas Haessig, Esq. ("Haessig") (collectively "Defendants").  Defendants' motion: ignores material facts alleged in Plaintiff's First Amended Complaint (Doc. 7); is contrary to Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., its plain language and purpose; and contrary to controlling United States Supreme Court and Sixth Circuit Authority.

Initially, Defendants' motion disregards that their unlawful eviction activities are litigation activity under *Heintz v. Jenkins,* 514 U.S. 291 (1995) ("*Heintz*"); and that their conduct was performed "in connection" with, and at the same time as, their client, the Huntington National Bank ("the Bank"), was attempting to recover mortgage payments and related foreclosure fees from Plaintiff, payments that the Bank claims survived the Sherrif sale of Plaintiff's home during foreclosure, and which the Bank claims she still personally owed.

Also, Defendants' motion fails to consider that they sought, and obtained, on behalf of the Bank, a monetary judgment in the amount of $112,604.00, and an award from the judicial sale of the property, in favor of the Bank when they obtained a writ of possession.  (Doc. 7 at 4-

5).    Furthermore, Defendants' motion does not deal with binding Sixth Circuit FDCPA jurisprudence holding that mortgage foreclosure actions are debt collection activities under the FDCPA for lawyers who "regularly" perform this function.  *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453 (6th Cir. 2013) ("*Glazer*") (holding that "[E]very mortgage foreclosure . . . is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e*., forcing a settlement) or compulsion (*i.e*., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)").   Since foreclosure actions, which ultimately seek possession of property, are debt collection attempts under the FDCPA, the eviction actions seeking that ultimate possession as a result of the foreclosure action are "in connection" with a that debt collection activity, *i.e*. the foreclosure.  *See also Hagy v. Demers & Adams, LLC*, 2011 WL 6091797 at *6-7 (S.D.Ohio 2011) (letter confirming receipt of executed warranty deed, and advising that no deficiency balance would be sought by Green Tree was "in connection" with the collection of the debt).

Additionally, because probable cause existed to obtain possession of the foreclosure property from Plaintiff, Defendants filed their eviction action to improperly pressure and persuade Plaintiff into leaving or paying funds, Plaintiff has stated a claim upon which relief may be granted for abuse of process.

## II. <u>STATEMENT OF THE FACTS</u>

Plaintiff resided at her home located at 12908 Oakview Boulevard in Garfield Heights, OH 44125 ("the property").  (Doc. 7 at ¶ 1).  Defendant Law Firm and Haessig, an attorney and owner at Defendant Law Firm, are regularly engaged in debt collection activities, namely residential foreclosure activities on behalf of their clients, such as the Bank.  (*Id*. at ¶¶ 3-5).  Both Defendants were engaged in and involved in both the foreclosure action and related eviction

actions involving the property and Plaintiff.  (*Id*. at  ¶¶ 5, 13, 16, 26, 29, 33).  Both Defendants were engaged in and involved in communicating a three day Notice to Leave Premises ("Eviction Notice") at the property where Plaintiff lived.  (*Id*. at ¶ 34).  Both Defendants sent communications concerning possession of the property and seeking information from Plaintiff, through sending her a letter on September 24, 2015, and also by sending a letter captioned "Notice to Vacate Property" dated January 5, 2016.  (*Id*. at ¶¶ 14-15, 22-24, Ex. 1, 3).

Due to Plaintiff's payment default on her mortgage with the Bank, Defendants filed a foreclosure complaint and action against Plaintiff in the Common Pleas Court, Case No. CV-15-840048 ("Foreclosure Action"), seeking possession of the property, as well as a declaration that money was due and owing from Plaintiff.  (*Id*. at ¶ 16-17).  The Complaint includes: " NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT." (Doc. 10-1 at 2, 7).

 In response to the judgment sought by Defendants for the Bank, the Magistrate Judge entered judgment in favor of Defendants' client, ordering the Sheriff to sell the property and pay to the Bank "out of the funds" from the sale "the sum of $112,604.00 plus interest," and related to that, the Magistrate Judge's opinion ordered "that a Writ of Possession of said property be issued."  (*Id*. at ¶ 25).  The bank's right to possess the property was linked in the same Foreclosure Action, with a declaration of its right to payment, and its right to proceeds from the Sheriff Sale.  At a Sheriff Sale of the property, the Bank purchased the property for $32,000.00, and subsequently issued a 1099-A to Plaintiff stating that she remained personally liable for repayment of the mortgage debt, $116,824.41, even after the Sheriff Sale.  (*Id*. at ¶ 19).

Defendants caused the Common Pleas Court in the Foreclosure Action to issue a writ of possession, *i.e.* for an immediate eviction, of Plaintiff from the property.  (*Id*. at ¶ 26).  Upon request of Plaintiff, Judge Maureen Clancy stayed the eviction for 90 days, or until May 11,

2016.  (*Id*. at ¶ 27).  Despite this order to stay, Defendants decided to ignore the stay, and seek other enforcement of the Magistrate's decision in the Foreclosure Action, i.e. issuing an Eviction Notice to Plaintiff, which she received.  (*Id*. at ¶ 29, Ex. 4).  Defendants then filed a new but related action to gain possession of the property from Plaintiff, this time in the Garfield Heights Municipal Court, Case No. CVG1600559 ("Eviction Action").  (*Id.* at ¶ 33).  The Eviction Action and Eviction Notice were based on the right of possession declared in the Foreclosure Action judgment.  (*Id*.  at ¶ 33, Ex. 4).

As Defendants sought possession of the property from Plaintiff through the Foreclosure Action and related Eviction Action, the Bank, at that same time, continued to seek over $28,000 in fees and past-due mortgage payments from Plaintiff.  In addition to the 1099-A issued by the Bank, stating that Plaintiff was personally liable for the deficiency from the sale of the home, the Bank sent multiple invoices and payment demands to Plaintiff informing her she was past due on her mortgage, and that she owed $28,000 in past-due mortgage payments and foreclosure fees.  (*Id*. at ¶¶ 19-20, Ex. 2).  The Bank attempted to collect these amounts after the Sheriff sale, and at the same time Defendants were seeking possession of the property and eviction of Plaintiff in both the Foreclosure Action and Eviction Action.  The Banks's collection attempts occurred at the same time Defendants served the Eviction Notice, requesting that Plaintiff either vacate her home, or immediately contact Defendants to discuss her continued occupancy.  (*Id*. at ¶ 22-24).

Defendants knew that the Bank was seeking collection of money from Plaintiff.  In the Eviction Notice, as well as their pleadings in the Eviction Action, Defendants stated that Plaintiff had failed to pay any rent or otherwise make payment to the Bank.  (*Id*. at  Ex. 4).  The Magistrate Judge, and Municipal Court Judge, in the Eviction Action found, that because the

Eviction Action was linked to, and connected with, the Foreclosure Action, the Municipal Court lacked jurisdiction or authority to order an eviction of Plaintiff. (*Id*. at ¶ 44-45).

At all times mentioned in the Amended Complaint, Defendants had failed to secure possession of the property, which was the primary goal of the Foreclosure Action that Defendants filed for the Bank. Although the Eviction Action was dismissed, Defendants had probable cause to seek possession of the property and the eviction of Plaintiff. Probable cause existed because Plaintiff possessed the property, which had previously been sold to the Bank in a 2015 Sheriff Sale which was later confirmed in the Foreclosure Action, and at which time the Bank took title to the property and had the right of possession against Plaintiff. (*Id*. at ¶ 69).

However, Defendants perverted the eviction proceedings in order to accomplish that which they were not permitted to accomplish—the immediate eviction and pressuring of Plaintiff. (*Id*. at ¶ 70). The Eviction Action was an attempt to coerce Plaintiff to move out and speed up her move out, during a time in which a stay had been issued to protect Plaintiff and her health. (*Id*. at ¶¶ 28, 48, 70). Defendants went so far as to have their agents apologize to Plaintiff upon the dismissal of the Eviction Action. (*Id*. at ¶¶ 46-47). Plaintiff prevailed in the Eviction Action, and the Municipal Court held that Defendants could not accomplish through that court the goals which they sought to accomplish. (*Id*. at ¶ 71). Defendants had attempted to use the Municipal Court to obtain an outcome that the court was powerless to order, due to a lack of jurisdiction. (*Id*. at ¶ 72). Judge Maureen Clancy, in the Foreclosure Action, ruled that Defendants' Eviction Action was an attempt to "sidestep" the stay issued in the Foreclosure Action. Defendants' conduct caused substantial harm to Plaintiff.

The eviction of Plaintiff was related to the ability of Defendants' client, the Bank, to collect the mortgage debt it is owed on this Federal Housing Administration ("FHA") mortgage.

(*Id*. at Ex. 1).   The mortgage between the Bank and Plaintiff was an FHA insured residential mortgage, meaning that after a foreclosure, the Bank must convey possession and title of the property to the FHA and the FHA then pays the debt owing on the mortgage to the Bank.   12 U.S.C. § 1710(a)(1)(B).   Thus, it is plausible that Defendants sought immediate eviction of Plaintiff from the property so that they could collect full payment on the debt.  (Doc. 7. Ex. 1).

### III.  LAW AND ARGUMENT

#### A.  Standard for Dismissal Under Fed.R.Civ.P. 12(b)(6).

Fed.R.Civ.P.  12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." The defense arises when the movant challenges the sufficiency of the claims of a complaint. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court expanded the holding in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" The second principle of *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." The Court explained that: "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, at 1949 (citing *Twombly*, 550 U.S. at 556). The court does not determine whether the plaintiff will ultimately prevail but whether there is "more than a mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, at 1959. Therefore, to survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

### B.  Background on the FDCPA.

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices" because "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers."  15 U.S.C. §§ 1692(b) and (e); and *Jerman v. Carlisle, McNellie, Rini, Kramer Ulrich, L.P.A.* 559 U.S. 573, 577 (2010) ("*Jerman*").  The focus of the FDCPA is on the conduct of the debt collector, not on the conduct of the consumer. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Whether a judgment or debt actually exists is not a factor. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("*Baker*"). The FDCPA broadly prohibits unfair or unconscionable collection methods: conduct which harasses, oppresses or abuses any debtor and any false, deceptive or misleading statements, in connection with the collection of a debt; and it also requires disclosure  of certain information. 15 U.S.C. §§ 1692d through g.

Congress intended the FDCPA be enforced primarily by consumers. *F.T.C. v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). Consumers act as "private attorneys general" to enforce it. *Baker*, 677 F.2d at 780, citing 123 Cong. Rec. 28112-13 (1977) (remarks of Rep. Annuzio); 1977 U.S. Code Cong. & Adm. News, at 1700; and *Jerman,* 559 U.S. at 602-604.  The FDCPA is a strict liability statute, which is an "extraordinarily broad" remedial statute that must be enforced as "Congress has written it." *Frey v. Gangwish*, 970 F.2d 1516, 1518-19 (6th Cir. 1992) ("*Frey*").  "[The Court must] construe its language broadly, so as to effect its purpose." *Stratton v. Portfolio Recovery Assoc.*, LLC, 770 F.3d 443 (6th Cir. 2014) ("*Stratton*"). To determine whether conduct fits within the FDCPA, the conduct is viewed through the eyes of the "least sophisticated consumer." *Barany–Snyder v. Weiner,* 539 F.3d 327, 333 (6th Cir. 2008).

### C. The Amended Complaint States an FDCPA Claim against Defendants. The Activities in the Foreclosure and Eviction Actions Are Direct and Indirect Debt Collection Activities in Connection with the Collection of a Debt.

Defendants assert that their litigation conduct after the confirmation of the sale is not subject to the ambits of the FDCPA. Defendants are wrong.  A "debt collector" is defined as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who <u>regularly</u> collects or attempts to collect, <u>directly or indirectly</u>, debts owed or due <u>or asserted to be owed</u> or due another."  15 U.S.C. 1692a(6) ("Emphasis added").   The Supreme Court has already held that the FDCPA "applies to the litigating activities of lawyers," *Heintz,* 514 U.S. at 294, and "imposes some constraints on a lawyer's advocacy," *Jerman,* 559 U.S. at 600.  "Litigating ... seems simply one way of collecting a debt," that was used against Plaintiff, an unsophisticated consumer, in an unlawful and deceptive manner. *Heintz,* 514 U.S. at 297.

"Although the communication at issue in *Heintz* was a letter rather than a legal pleading, the Court recognized the applicability of the FDCPA even to attorneys whose debt-collection activities consisted of litigation, and nothing in that analysis commands a differentiation between the two." *Marquiez v. Weinstein, Pinson & Riley, P.S.*, __ F.3d__, 2016 WL 4651403 (11th Cir. 2016) ("*Marquiez*") (collection cases, including *Stratton*, that have concluded that pleadings or filings in court can fall within the FDCPA).

Without question, mortgage foreclosure and "actions surrounding the foreclosure proceeding" are debt collection activities, and activities in connection with collection of a debt under the FDCPA.  *Glazer*, 704 F.3d at 455, 459, 463 ("The question is whether mortgage foreclosure is debt collection under the Act. We hold that it is.").  In fact, every foreclosure

proceeding is a debt collection activity, even proceedings *in rem* where no personal liability is sought, because their "ultimate purpose" is payment of a debt.  *Id.*, at 463.  As noted in *Glazer:*

> In fact, **_every_** mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e[.],* forcing a settlement) or compulsion (*i.e.*, obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt).

*Id.*, at 461. (emphasis added).

In this case, Defendants, who indisputably are debt collectors (Law Firm Defendant was a party in *Glazer*), seek this Court to carve out an exception to the FDCPA.  Defendants' position ignores *Heintz*, *Glazer*, *Stratton*, defies common sense logic, is contrary to statutory construction, and defeats the purposes of the FDCPA.  The definition of "debt collector" under § 1692a(6) of the FDCPA:

> includes one who 'directly or indirectly' engages in debt collection activities . . . . Since a foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt, those who engage in such foreclosures are included within the definition of debt collectors.

*Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992) (emphasis added).  The statutory construction of "directly or indirectly" begins with the text of the statute. *Glazer*, 704 F.3d at 460 (citation omitted).

In this case, the Amended Complaint alleges facts that demonstrate that Defendants attempted to collect a debt from Plaintiff using both "compulsion" and "persuasion." They attempted to "persuade" her to settle the debt or pay money on her own when they sent her at least one communication requesting that she contact them to "make arrangements" for her to stay in the home, *i.e*., pay the Bank. They then used "compulsion" as outlined in *Glazer* when they sold the home in the Foreclosure Action, and continued that "compulsion" into the related Eviction Action to get possession of the property. Also, possession was a condition precedent to

9

collecting the mortgage debt payment on the home: Defendants needed to first obtain possession of the property from Plaintiff before they and the Bank could collect the payment of the underlying debt from FHA.  12 U.S.C. § 1710(a)(1)(B) (requiring delivery of title and possession of the property to the "the Secretary" before paying mortgage insurance proceeds to the mortgagee); (Doc. 7, at Ex. 1) ("HUD generally requires that there be no one living in properties conveyed to the Secretary . . . .  [The FHA] must sell all acquired properties and use the proceeds of sale to help replenish the FHA Mortgage Insurance Fund.").  Thus, Defendants "directly and indirectly" used the Foreclosure and Eviction Actions as methods to obtain payment of the underlying mortgage debt.

Since Defendants needed to remove Plaintiff from the home before they could collect the mortgage debt on the property for the Bank from the FHA, the Eviction Action, which is admittedly based on the Foreclosure Action judgment, therefore is "in connection" with that debt collection attempt.  Because both the Foreclosure Action and the Eviction Action were debt collection attempts and Defendants were both "directly and indirectly" involved in collecting the debt, this Court should deny Defendants' motion to dismiss the FDCPA claims.

This is consistent with the Sixth Circuit's reasoning in *Estep v. Manley Deas Kochalski, LLC* 552 Fed. Appx. 502, fn. 2 (6th Cir. 2014) ("*Estep*").  In *Estep*, the Court cautioned that when determining whether the animating purpose of an act is to induce payment, "[t]he word 'payment' should not be interpreted too narrowly."  *Id.*  Instead, "[payment] includes both direct payments and payments in kind.  Thus, if the letter was intended to induce the Esteps to leave their home prematurely, and [the creditor] would receive some financial benefit as a result of that outcome, then the letter would be sent in connection with [the debt collector's] effort to collect the debt owed to [the creditor]."  *Id.*  That is the exact situation faced in this case.  Defendants

sent communications and engaged in an Eviction Action which had the animating purpose of collecting payment of a debt by forcing Plaintiff to "leave [her] home prematurely," and that would result in "some financial benefit" to the Bank because they would receive their payment from FHA mortgage insurance earlier.  Thus, the animating purpose of the communications and the Eviction Action in this case was to collect payment of the debt.

Not only is the Eviction Action and conduct related to the Foreclosure Action debt collection activity under *Heintz*, but the Eviction Action is, in and of itself, debt collection activity.  See *Nelson v. Am. Power & Light*, 2010 U.S. Dist. LEXIS 82777, *17-20 (S.D. Ohio 2010) (holding that in Ohio, forcible entry and detainer actions, are debt collection activities to which the FDCPA applies).  *See also Montgomery v. Donnett*, 2005 U.S. Dist. LEXIS 29860 (S.D. Ohio 2005) (holding that eviction filing was a violation of the FDCPA); *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass., 2014) ("[A]n eviction action can implicate the FDCPA."); *Sanz v. Fernandez*, 633 F. Supp. 2d 1356, 1360-61 (S.D. Fla., 2009) (holding that the sending of an eviction notice, as well as the filing of an eviction complaint, are debt collection activities under the FDCPA); *Romea v. Heiberger & Assocs.*, 163 F. 3d 111, 116 (2d Cir. 1998) (holding that a three-day notice sent in connection with possessory *in rem* action was a debt collection communication).  More clearly, in Ohio, Defendants' Notice to Leave is to be used for non-payment of rent.  *See* Ohio Rev.Code. § 1923.04.

Likewise, in this case, it is clear from the pleadings filed by Defendants in the Foreclosure Action and Eviction Action, that the Eviction Action was entirely based upon, and resulted out of, the judgment in the Foreclosure Action.  Furthermore, eviction was a necessary step in order to obtain payment of the underlying mortgage debt from mortgage insurance.

11

Additionally, excusing litigation activities after the confirmation of sale conflicts with Congress's intent "to insure that those debt collectors who refrain from abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e); and *Jerman*, 559 U.S. at 557.   As between similarly situated debt collectors, all having filed foreclosure actions, Defendants' position provides a competitive advantage to the collectors who take the more aggressive, but incorrect, view of the law.  For example, debt collectors could construe the FDCPA as allowing them to conduct unlawful collection actions after the confirmation of sale, while their law-abiding competitors must bear those costs as a consequence of correctly construing of the FDCPA.  That result is not only unfair to the law-abiding collectors, but creates a race to the bottom that will leave the field to collectors with the fewest scruples.  This is exactly what Congress intended the FDCPA to prevent.      .

### D. The Foreclosure Action, Eviction Action, and Related Activities, Are Debt Collection Activities Under the FDCPA Regardless of Whether the Foreclosure is filed *In Rem* or Results in a Deficiency Judgment.

Defendants claim that the FDCPA does not apply to an *in rem* foreclosure action in which no deficiency judgment existed or was sought.  Defendants are wrong. In the Sixth Circuit, it is irrelevant whether the foreclosure action is filed *in rem*, whether a deficiency judgment even exists, or whether it is sought.   In its analysis as to why foreclosure and foreclosure related activities are always debt collection activities under the FDCPA, the Sixth Circuit analyzed decisions that Defendants embrace:

> The view adopted by a majority of district courts, and the one followed below, is that mortgage foreclosure is not debt collection. . . .  However, if a money judgment is sought against the debtor in connection with the foreclosure, this view maintains, there has been debt collection, because there was an attempt to collect money. Despite its pervasiveness in the district courts, we find this approach unpersuasive and therefore decline to follow it.

*Glazer*, 704 F.3d at 460-62 (citations omitted).  Instead, the Court went on to cite favorable decisions from other circuit courts that support the common sense logic and public policy behind its holding in *Glazer*, 704 F.3d at 463.  In this case, Defendants' Foreclosure Action and Eviction Actions are those very "actions surrounding the foreclosure proceeding." *Id.* at 462-63. Defendants' Eviction Action was based soley upon its possessory rights from the Foreclosure Action, and it was the Foreclosure Action that gave Defendants' client a right of possession and color of title to the property.

Because the United States Supreme Court and Sixth Circuit Court of Appeals have rejected Defendants' interpretation, and supporting reasoning in relation to the FDCPA, this Court should do the same, and deny Defendants' motion to dismiss.

> **E. The Sheriff Sale Did Not Terminate Debt Collection Activities.  Defendants' Communications Are in Connection with Direct and Indirect Debt Collection Activities With the Animating Purpose to Obtain Payment and Possession of the Property, *i.e*. Transfer of Value from Plaintiff.**

Defendants argue that the written communications to Plaintiff were not communications in connect with the collection of the debt.  Defendants are wrong. A communication is "in connection" with the collection of a debt when it either demands payment, it references another matter which is a debt collection attempt, or it makes an attempt to collect a debt more likely to succeed. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011).  In this case, Defendants' communications collectively made their attempt to collect money more likely, as such collection required Plaintiff to lose occupancy of the property, or they referenced collection matters, *i.e*. the Foreclosure Action and Eviction Actions.  Whenever a communication is sent by a debt collector to a debtor, the communication must state that it comes from a debt collector.  15 U.S.C. § 1692e(11); and *Frye* (post-judgment letter).  Those disclosures are entirely absent from at least three communications sent by Defendants, *i.e*. the Notice to Vacate Property (Doc. 7,

Ex. 3), the Eviction Notice (Doc. 7, Ex. 4), and oral communications between agents and employees of Defendant and Plaintiff, in which they failed to provide the same notice. (Doc. 7, at ¶¶ 46-47).

Although the HUD Letter referenced in *Estep* was held not to be a communication in connection with a debt, the Court did not determine as a matter of law that HUD Letters are never communications in connection with a debt. That determination must be made on a case by case basis considering the circumstances and language of the specific letter. *Estep*, 552 Fed. Appx. at 508. Even if the letter is not a communication in connection with a debt under *Estep*, it is evidence of the relationship between Plaintiff's occupancy of the property, the Eviction action, and payment of the debt sought by the Bank from FHA, which is why the Foreclosure Action and Eviction Action are debt collection attempts in the first place. *Glazer*, *supra*.

All three of these communications are "in connection" with the Foreclosure Action itself, relate to the foreclosure judgment or proceedings, are based on the judgment or proceedings, and were communicated while the Foreclosure Action was pending. The communications reference the Foreclosure Action, often by case number. All three communications sought possession of the property, either via persuasion or compulsion, so that payment of the debt could be collected from mortgage insurance through the FHA, which as a condition precedent required Plaintiff to no longer occupy the home. These communications were sent and authored by Defendants. The Eviction Notice specifically mentions the fact that Plaintiff has paid "no rent," while the Notice to Vacate Property invites Plaintiff to contact Defendants and arrange for continued occupancy through them, likely involving some sort of payment. The Notice of Pending Acquisition directly references the requirement that Plaintiff no longer occupy her home, which happened to

be necessary before the debt owed by Plaintiff could be collected from FHA. These communications are in connection with the collection of a debt under *Glazer*.

The collection of an alleged debt did not cease simply because a Sheriff sale occurred in the Foreclosure Action. The sale did not end the Bank's or Defendants' attempts to collect payment of the mortgage debt. In fact, at the same exact time these communications were being sent to Plaintiff by Defendants, and well into 2016, Plaintiff was receiving invoices for over $28,000 in past due payments and fees related to her mortgage. (Doc. 7, Ex. 2). The Bank, or Defendants, were sending or directing frequent invoices and communications to collect mortgage payments, even after the Sheriff sale of the property, and the Bank issued a 1099-A to Plaintiff, also after the Sheriff sale of the property, stating that she remained liable for the debt. (Doc. 7, ¶¶ 19-20, Ex. 2). The Amended Complaint states a plausible claim that Defendants' communications were made "directly or indirectly" "in connection" with the collection of a debt and payment of a debt from Plaintiff, whether that payment or collection be from Plaintiff or the FHA mortgage insurance program. Accordingly, this Court should deny Defendants' motion.

**F. Defendants' Authority is Inapplicable, Distinguishable on the Material Facts, and Conflicts with Binding FDCPA Authority.**

The district court decisions cited and relied on by Defendants are not controlling. As explained above, Defendants' authorities are not supported by existing law, statutory construction and the FDCPA's legislative purpose. The cases were decided before *Glazer,* and are in conflict with *Glazer.* As explained herein, the cases are inapplicable and distinguishable.

First, all of the district court decisions within the Sixth Circuit that are relied on by Defendants to claim evictions and post-sheriff sale actions are not debt collection activities, are based on evictions pursuant to law in the State of Michigan. No eviction under Michigan law is before this Court. Instead, before this Court is unlawful conduct, including an Eviction Action,

15

occurring in Ohio and under Ohio law. As noted above, two courts from the Southern District of Ohio have held that in Ohio, underlying eviction actions can be the basis for FDCPA liability. Thus, Defendants' citations are not controlling in this matter.

Second, Defendants' reliance on *Bond v. U.S. Bank Nat'l Ass'n*, 2010 U.S. Dist. LEXIS 29716, *15-16 (E.D. Mich. 2010) is misplaced. In *Bond*, the Eastern District of Michigan found that in the facts before it, the debt collection process ended when title transfered. However, *Bond* was decided years prior to *Glazer*, which held that reimbursement of mortgage debt to the mortgagee is a debt collection action. Furthermore, the court in *Bond* noted that no foreclosure action ever occurred in relation to or before the eviction action—the homeowner voluntarily abandoned the property in a previous bankruptcy action, but no foreclosure proceedings ever occurred. *Id.*, at *14-15. However in this case, there was a Foreclosure Action, there was a writ of possession issued in the Foreclosure Action judgment, and Defendants sought to obtain enforcement of the stayed foreclosure judgment in the Eviction Action. The court in *Bond* relies on the fact that no debt existed after the bankruptcy and Sheriff sale, which is not similar to this case. *Id.*, at *15-16. In this case, the Bank continued personal collection efforts against Plaintiff, and the Bank was not going to receive its full payment of the mortgage debt until after Plaintiff's occupancy of the home ended. Finally, *Bond,* is contrary to well settled law under the FDCPA, that the actual existence of a valid debt is immaterial and irrelevant. *See, e.g.*, *Baker,* 677 F.2d at 777. Thus, reliance on *Bond* is misplaced.

Third, Defendants' reliance on *Burks v. Wash. Mut. Bank, F.A.* 2008 U.S. Dist. LEXIS 95306, *27 & fn. 11 (Mich. 2008) is also erroneous. In *Burks,* the court relied on the fact that no money was owed after the sheriff sale because there no longer existed any debt due to no

deficiency existing.  The home was purchased at a Sheriff sale after a full-debt bid was made by the purchaser, meaning the full amount of the mortgage had been, at that point, fully paid.  *Id.*

By stark contrast, in this case, the Bank did not make a full-debt bid, but instead obtained the property for nearly a quarter of the mortgage debt, which it reflected in its 1099-A referenced in the Amended Complaint.  Furthermore, the Bank claimed and still claims that Plaintiff owes mortgage payments to it in both its 1099-A and also in its numerous requests for past-due payments, all of which were made and issued to Plaintiff after the Sheriff sale.  Additionally, *Burks* conflicts with the fact that the existence of a valid debt is irrelevant under the FDCPA.  If a valid debt had to exist in order for conduct to be considered debt collection, there could never be a violation of the FDCPA related to collection of invalid debts, aged debts, or other such conduct, which the Sixth Circuit and other courts routinely recognize as violations of the FDCPA.  Therefore, *Burks* is entirely distinguishable and inapplicable in this case.

Finally, Defendants' reliance on *Goodson v. Bank of America, N.A.* 600 Fed. Appx. 422 (6th Cir. 2015) ("Goodson") is misplaced.  In fact, *Goodson's* factors support Plaintiff's claims.  Defendants, who sent the communications and engaged in the Eviction Action, were debt collectors, working for the Bank as creditor, and Plaintiff was the debtor.  The communications were sent as part of a strategy to make payment more likely, *i.e.* causing Plaintiff to make payments to stay in the home, or to get her to move out so that the Bank and Defendants could collect the mortgage debt from FHA.  The letters were not sent in response to inquiry from Plaintiff.  At least one communication threatened consequences due to non-payment of rent.

Since Defendants' authorities are not supported by existing law, statutory construction and the FDCPA's legislative purpose are distinguishable, inapplicable, and in conflict with the holding and logic of *Glazer*, Defendants' motion must be denied.

17

### G. The Amended Complaint States a Claim Against Defendants for Abuse of Process Because Probable Cause Existed for the Eviction of Plaintiff.

In relation to the Abuse of Process claim in the Amended Complaint, Defendants only challenge the existence of probable cause in their motion to dismiss.  The Amended Complaint adequately and properly alleges the existence of probable cause for the eviction of Plaintiff. Defendants' interpretation would essentially do away with the tort of abuse of process in Ohio.

First, Defendants materially misquote and mischaracterize the law of abuse of process in Ohio, and they pay no attention to the full language of Plaintiff's pleadings.  Defendants' claim that one of the elements is that a claim be brought "in proper forum," and later claim that it must be brought "in the proper forum" when the element to which Defendants refer actually requires that the legal proceeding be "set in motion in proper form."  (*Compare* Doc. 7 at 14-15 *with Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298 (1994) ("*Yaklevich*")).  "Abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order."  *Robb v. Chagrin Lagoons Yacht Club, Inc.,* 75 Ohio St.3d 264, 271 (1996).  The correct elements of abuse of process in Ohio are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Id.*

Second, Defendants ignore the full language of Plaintiff's pleadings. "It is axiomatic that the plaintiff is generally considered the 'master' of his complaint." *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 931 (9th Cir. 1986) (emphasis added; internal citations omitted). While Plaintiff has chosen to fully plead and pursue Ohio's abuse of process claim, Defendants focus on only three of the ten paragraphs comprising Plaintiff's abuse of process claim and pretend as though the others do not exist. Plaintiff specifically pleads that Defendants instituted

18

legal proceedings against her "in the Municipal Court in proper form," that "Defendants had probable cause for seeking the eviction and filing an action to evict Plaintiff," that Defendants' ulterior purpose was to "pressure the immediate eviction of Plaintiff from her home, and coerce her to move out to speed up her move out despite being given a stay from the Common Pleas Court," and that Defendants' actions directly caused her damage to her health. (Doc. 7 at 11-12).

Conduct similar to that alleged by Plaintiff in her complaint for abuse of process has already survived motions to dismiss in Ohio. *See Nelson v. Am. Power & Light*, 2010 U.S. Dist. LEXIS 82777 (S.D. Ohio 2010). In *Nelson*, the defendant had filed two separate eviction actions based on a breach of lease for failure to pay electric bills, and the only difference was the amount of the plaintiff's alleged unpaid electric bill. *Id.*at *7. In her complaint, the plaintiff pled that "although the actions were brought 'in proper form,' that is, in the name of her landlord or its agent, the true purpose of the action was not to obtain a judgment evicting her from the premises, but to coerce her into paying her electric bill." *Id.* at *32. The plaintiff further claimed that the second element of abuse of process was satisfied because the defendant "attempted to achieve a result—payment of the electric bills—that the court, in an eviction action, was powerless to award." *Id.* at *32. In holding that the plaintiff's abuse of process claim survived a motion to dismiss as it had been sufficiently well pled, the court noted that even though the plaintiff pled for other counts that there was no basis for the eviction action, "Ohio courts consistently recognize a plaintiff's ability to plead claims in the alternative." *Id.* at *33 (citing *Dever v. Lucas*, 174 Ohio App. 3d 725, 733-34  (5th Dist. 2008)). The court further noted that the defendant's own arguments about the legitimacy of its actions "create[d] a plausible basis for the first element of [abuse of process]." *Id.* at *33.

In this case, Plaintiff, like the plaintiff in *Nelson*, has alleged that the true purpose of Defendants' filing the Eviction Action was not to obtain a judgment evicting her from the premises, but to coerce her to vacate immediately (which would result in payment of the mortgage debt by FHA) despite the Common Pleas Court's order granting her additional time to do so. Plaintiff specifically pled that Defendants attempted to achieve a result — a faster move-out — that the Municipal Court lacked jurisdiction or authority to award. Plaintiff's alternative allegations for other counts, that Defendants did not have the right to evict her, are made pursuant to her right to plead claims in the alternative. In any case, Defendants' insistence that it acted lawfully in filing the Municipal Court action further creates a plausible basis for Plaintiff's abuse of process claim. Thus, Plaintiff states a plausible abuse of process claim.

### H.  Defendants' Motion Improperly Relies on Facts Outside of the Complaint.

Defendants' motion relies, in part, on documents not attached to the Amended Complaint, but which it attaches to what it refers to as the "HUD Letter." Because these documents are materials outside of the Complaint, they cannot be considered in relation to Defendants' motion to dismiss.  *Williams v. Javitch, Block & Rathbone, LLP*, 480 F.Supp.2d 1016, 1021 (S.D. Ohio 2007). If they are considered, the Court should give notice to the parties, and convert the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d); *see also Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

Respectfully submitted,

| | |
|---|---|
| */s/ Daniel J. Myers* | */s/ Edward Icove* |
| Daniel J. Myers, Esq. (0087909) | Edward A. Icove (0019646) |
| Myers Law, LLC | Icove Legal Group, Ltd. |
| 600 East Granger Road, Second Floor | Terminal Tower, Suite 627 |
| Cleveland, OH 44131 | Cleveland, OH 44113 |
| P:  216-236-8202 / F:  216-674-1696 | 216-802-0000; Fax: 216-802-0002 |
| E:  DMyers@MyersLawLLC.com | E: ed@icovelegal.com |
| Counsel for Plaintiff | Counsel for Plaintiff |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

It is hereby certified that this case has been assigned to a standard track and that this memorandum adheres to the page limitations set forth in Local Rule 7.1.

*/s/Daniel J. Myers*
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2016 a true and accutate copy of this brief was filed and served electronically via the Court's  electronic filing system.  Parties may access this through the Court's system.

*/s/Daniel J. Myers*
Attorney for Plaintiff