IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TINA TODARO | ) | CASE NO: 1:16 CV 01480 |
| | ) | |
| Plaintiff | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| REIMER, ARNOVITZ, CHERNEK & | ) | **DEFENDANTS REIMER, ARNOVITZ,** |
| JEFFREY CO., L.P.A., et al. | ) | **CHERNEK & JEFFREY CO., L.P.A.** |
| | ) | **AND DOUGLAS HAESSIG'S REPLY IN** |
| Defendants | ) | **SUPPORT OF MOTION TO DISMISS** |

**I.    THE FDCPA DOES NOT APPLY TO THE POST FORECLOSURE EVICTION PROCEEDINGS HERE: PLAINTIFF'S RELIANCE ON INAPPLICABLE CASE LAW AND GENERAL PROPOSITIONS CANNOT SUPPORT AN FDCPA CLAIM (PLAINTIFF'S SECTION 1692f AND 1692e CLAIMS)**

Pursuant to well established precedent, including case law from the Sixth Circuit holding that the FDCPA is not implicated with respect to the post-foreclosure eviction proceedings at issue here, Todaro's FDCPA claims must be dismissed as a matter of law.  Plaintiff's bare conclusions that Defendants violated §1692f and 1692e of the FDCPA by filing the second municipal court eviction action are unsupported by any applicable legal authority.  All of the decisions cited by Defendants negate any argument by Todaro that the eviction activity was "in connection with debt collection activity" and thus subject to the FDCPA. Plaintiff misinterprets Defendants' argument with respect to whether the FDCPA applies to activity as alleged in her Amended Complaint.  Defendants did not argue that the FDCPA is inapplicable here because the underlying foreclosure action was an in rem foreclosure action in which no deficiency judgment existed or was sought.  Defendants' argument is that the post-foreclosure <u>municipal court eviction proceedings</u> are not subject to the FDCPA.  Contrary to Plaintiff's argument, the

foreclosure action is not at issue here and the allegations of the Amended Complaint relate to the filing of the second eviction action only.  (Amended Complaint, ¶58-60).

**A.  *Glazer* is not applicable here as the allegations in the Amended Complaint relate to the post-foreclosure  eviction proceedings and not  the foreclosure action.**

Plaintiff argues that all of the cases cited by Defendants in support of their argument that the FDCPA does not apply were decided before *Glazer* and are thus in conflict with *Glazer* and not controlling here.  However, only two cases cited by Defendants, *Bond and Burk*, were decided before *Glazer*.  Those are the only cases Plaintiff attempts to distinguish.  Plaintiff ignores the multitude of other cases that were decided after *Glazer*.  As set forth in Defendants' motion to dismiss, although *Bond* and *Burks* were decided before *Glazer*, they are directly on point and support the argument that the post-foreclosure activity here is not covered under the FDCPA.  (See, Motion to Dismiss, pp.8-9).  While *Glazer* held that mortgage foreclosure is debt collection under the FDCPA, that is not the issue here.  Plaintiff's claims arise out of the separate second municipal court eviction proceedings.  (Amended Complaint, ¶58-60).  As explained by the district court in *Hutsler*, a case cited by Defendants and wholly ignored by Plaintiff, *Glazer* is not applicable in the circumstances here:

> [T]hese cases are largely inapposite, because the activities alleged to violate the FDCPA in this case did not involve a mortgage foreclosure, but letters sent and an unlawful detainer action filed *after* the foreclosure was complete and the property had been sold.  Courts have nearly always found such activities are not debt collection activity covered by the FDCPA, even in jurisdictions adopting the rule that mortgage foreclosures constitute debt collection.

*Hutsler v. Shapiro & Kreisman, LLC*, Case No. 4:13-cv-2159-SPM, 2014 U.S. Dist. LEXIS 74558, *16-17 (E.D. Mich. June 2, 2014).  Again, the activities here that are alleged to violate the FDCPA do not involve mortgage foreclosure, but rather post-foreclosure eviction activity after the foreclosure was complete and the property was sold.

2

The district court in *Hutsler* relied upon *Bobo v. Trott & Trott*, *P.C.,* No. 13-14696, 2014 U.S. Dist. LEXIS 17643 (E.D. Mich. Feb. 12, 2014), a case it found instructive in distinguishing *Glazer*.  In *Bobo*, the plaintiff's property went into foreclosure and was sold at a Sheriff's Sale. The law firm then commenced eviction proceedings, and sent plaintiff a "Notice to Vacate" demanding that the plaintiff leave the property and initiated an eviction action in state court.  The plaintiff filed suit, contending that that the Notice to Vacate letter violated the FDCPA.  The *Bobo* court acknowledged that under the Sixth Circuit precedent in *Glazer*, while mortgage foreclosure may be a means of collecting a debt under the FDCPA, the same reasoning did not apply to post-foreclosure attempts to obtain possession of a property:

> [A]t the time of Defendant's involvement, the mortgage foreclosure process was complete:  a Sheriff's sale was held and the redemption period had expired. Defendant's role was to send the notice to vacate and commence eviction proceedings.  Defendant was not seeking a deficiency judgment or the payment of money; rather, Defendant demanded that plaintiff vacate the premises.  Under these circumstances, Defendant was not attempting to collect a debt.

*Hutsler, supra.* at *17-18, citing *Bobo v. Trott & Trott*, *P.C.*, No. 13-14696, 2014 U.S. Dist. LEXIS 17643, at *2 (E.D. Mich. Feb. 12, 2014).

Likewise, here at the time of the municipal court eviction proceedings and when the Notice to Vacate and Notice to Leave Premises letters were sent, the foreclosure was complete and the property had been sold.  None of the letters or eviction action mentions the underlying debt or that Defendants sought to collect on the underlying debt in the action.  Instead, Plaintiff alleges that because the Bank sought to collect on the underlying debt by sending a mortgage statement and 1099-A which purportedly stated that she remained personally liable on the repayment of the mortgage debt, the law firm's filing of the second eviction action was an attempt to collect a debt.  First, conduct by the Bank separate and apart from Defendants cannot be imputed to the law firm.  *See, Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162,

1173 (9th Cir. 2006) (no legal authority for holding attorney vicariously liable for actions of its client under FDCPA).  Not surprisingly, Plaintiff did not attach a copy of the 1099-A or the instructions for preparing it to the Amended Complaint.  Defendants assume Plaintiff is referring to Box 5 on the 1099-A that may have been checked and states:  "Box 5.  Was borrower personally liable for repayment of the debt."  Plaintiff misrepresents the 1099-A, as the instructions for Box 5 state:  "If the borrower was personally liable for repayment of the debt <u>at the time the debt was created</u> or, if modified, at the time of the last modification, enters an "x" in the check box."[1]  Thus, the 1099-A did not state Plaintiff <u>remained personally</u> liable.  Again, the eviction actions and the letters were of the process by which the buyer of the property attempted to gain possession of it, not payment of money from Todaro.  *See, Hutsler* at *19.

### B.  Plaintiff fails to address the post-*Glazer* decisions cited by Defendants.

Plaintiff fails to address <u>any</u> of the remaining seven (7) decisions cited by Defendants, including the post – *Glazer* decisions that are directly on point and cited by Defendants:  *Adams v. JP Morgan Chase Bank, N.A., et al.*, Case No. 15-12788, 2016 U. S. Dist. LEXIS 71791 (E.D. Mich. June 2, 2016) (eviction activity cannot be the basis for an FDCPA violation); *Bobo v. Trott & Trott, P.C.,* No. 13-14696, 2014 U. S. Dist. LEXIS 17643 (E. D. Mich. Feb. 12, 2014) (notice to vacate and initiation of eviction proceedings not debt collection under FDCPA); *Conlin v. Trott & Trott, P.C.*, Case No. 13-14377, 2014 U.S. Dist. LEXIS 59828 (E.D. Mich., April 30, 2014)  (FDCPA not implicated because debt collection process is over and foreclosure is not a claim before the court anymore; eviction action seeking removal of person from home, as new title holder is seeking possession of property and not to collect a debt); *Himmelein v. Fed. Home Loan Mortg. Corp.*, 154 F. Supp.3d 560 (W.D. Mich., Dec. 31, 2015) (FDCPA not implicated by actions taken by debt collector during redemption period, and <u>after</u> foreclosure occurred, as

---

[1] See, Instructions for forms 1099-A and 1099-C, https://www.irs.gov./instructions/i1099ac/ar62.html#d0e 192.

plaintiff had no obligation to make payments on debt that no longer existed); *Hutsler v. Shapiro & Kreisman, LLC*, Case No. 4:13-cv-2159-SPM, 2014 U.S. Dist. LEXIS 74558, *16 (E. D. Mo., June 2, 2014) (district court held that letters sent and an unlawful detainer action after a foreclosure action was complete are not debt collection activities covered by the FDCPA); *Call v. Olsen,* No. 13-5241 RJB, 2013 U. S. Dist. LEXIS 102316, *11-12 (W. D. Wash. July 18, 2013) (law firm's filing of unlawful detainer action after bank acquired property in foreclosure sale not an attempt to collect a debt under FDCPA); *Hidalgo v. Aurora Loan Servs. LLC*, No. 13-CV-1341-14 (JMA), 2013 U.S. Dist. LEXIS 124245, *10 (S. D. Cal. Aug. 29, 2013) (unlawful detainer action regarding holdover tenants after foreclosure action does not qualify as debt collection under FDCPA).

### C.  Plaintiff relies on inapplicable case law in an attempt to implicate the FDCPA.

Instead, Plaintiff relies on decisions which are clearly distinguishable, inapplicable and misrepresent the legal standards in an attempt to support her general proposition that eviction actions may implicate the FDCPA. (Opp. p.11).  The cases cited by Todaro do not hold that eviction activity itself is debt collection or subject to the FDCPA, but that under certain circumstances, it may. Those circumstances are not present here.

For example, in *Nelson v. Am. Power & Light*, 2010 U.S. Dist. LEXIS 82777 (S.D. Ohio 2010), the district court held that a specific demand for money for unpaid rent arising out of a dispute over an electric bill is debt collection activating the FDCPA.  In *Nelson,* the complaint specifically alleged that there was due and owing a certain amount which was demanded by defendant and not paid.  *Id.*at *6-7.  Plaintiff also selectively quotes *O'Connor v. Nantucket Bank*, 992 F.Supp.2d 24 (D. Mass., 2014), another inapplicable case here for the proposition that an eviction action can implicate the FDCPA. However, the court went on to say that eviction can

implicate the FDCPA particularly "where some demand for payment is tied to the property at issue, e.g., utility bill or damages for unpaid rent." In *O'Connor*, the court found that the plaintiff sufficiently alleged an FDCPA claim arising out of a specific demand for use and occupancy fees. *Id.* at 34. Here, there is no specific demand with respect to any payment of money.

Likewise, Plaintiff cites to *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998), another case that is wholly inapplicable and not controlling here. Although the Second Circuit in *Romea* held that a three day notice was debt collection, the court explained that the FDCPA applied because the communication to the debtor demanded back rent, which was a debt. *Id.* at 115-116. The court found that the obligation was a debt because there was a contractual obligation under a lease agreement. Here, there was no demand for back rent, and no obligation at issue. *Sanz v. Fernandez*, 633 F.Supp.2d 1356 (S.D. Fla., 2009) and *Montgomery v. Donnett*, 2005 U.S. Dist. LEXIS 29860 (S.D. Ohio 2005) are similarly inapplicable as they involved an action for unpaid rent and the eviction notices specifically demanded delinquent rent owed.

The cases cited by Plaintiff do not hold that all post-foreclosure eviction proceedings are debt collection and do not challenge any of the legal precedent cited by Defendants. They certainly do not assist Plaintiff in establishing that the filing of the municipal court eviction action or sending eviction notices by the Defendants were instituted to collect a debt.

As set forth in the Reimer Firm's Motion to Dismiss, Federal Courts, including courts in the Sixth Circuit, have held that law firms filing post-foreclosure eviction actions are not subject to the FDCPA when the eviction action seeks to remove the plaintiff from the property and not to collect any debt. The claims and alleged improper activity here arise out of a separate second

eviction proceeding filed in municipal court, not the underlying foreclosure and there are no specific allegations that Defendants took any action other than to remove Plaintiff from the Property.  Because there was no debt at issue in the eviction action, and the municipal court eviction action was to seek possession of the Property, there is no collection action that the FDCPA was designed to protect.  Plaintiff's §1692e and 1692f claims arising out of the filing of the second eviction action must be dismissed as a matter of law.

## II.    THE FDCPA DOES NOT APPLY TO THE HUD LETTER AND OTHER POST-FORECLOSURE EVICTION COMMUNICATIONS

Plaintiff alleges that Defendants violated 15 U.S.C. § 1692 (e)(11) because they failed to identify themselves as debt collectors in the HUD letter, Notice to Vacate, and Notice to Leave Premises.  Again, even if the eviction proceedings were covered under the FDCPA (which they are not) the three communications at issue were not in connection with the collection of a debt.

### A.  The Trial Court and Sixth Circuit's Decision in *Estep* makes clear that the HUD letter of continued occupancy is not subject to the protections of the FDCPA.

When confronted with the issue of whether a HUD letter is an attempt to collect a debt and thus covered under the FDCPA, the Sixth Circuit in *Estep* held that it was not.  *Estep v. Manley Deas Kochalski, LLC*, 552 Apx. 502 (6th Cir. 2014).  Plaintiff glosses over the holdings by both the district court and Sixth Circuit in *Estep*, and states in a conclusory fashion that the FDCPA applies because the communications are evidence of the relationship between plaintiff's occupancy of the property, eviction action and payment of the debt sought by the Bank from FHA.  (Opp. p. 14).  Plaintiff's bare conclusion that *Estep* does not apply to the instant action is not supported by logic or case law.  Despite the clear holding in both the district court and Sixth Circuit decisions in *Estep*, and despite not a single concrete allegation, Todaro concludes that the HUD letters purpose was to seek possession of the property so that the Bank could collect money

from FHA (and not Plaintiff) and thus brings the HUD letter within the ambit of the FDCPA. (Opp. p. 11).  Plaintiff cites to no authority in support of this tenuous argument.  In fact, the trial court in *Estep* specifically held that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must <u>be to induce payment by the debtor</u>." *Estep v. Manley Deas Kochalski*, 942 F. Supp. 2d 758, 763 (S.D. Ohio 2013) (emphasis added). *See, also Santoro v. CTC Foreclosure Service*, 12 F. App'x 476, 480 (9th Cir. 2001) (notice of pending foreclosure sale required under statute does not seek to collect debt and is not covered under FDCPA).

Here, Plaintiff concedes that under federal law, the HUD letter must be sent to Plaintiff to explain her rights if she wished to reside in the house.  Plaintiff fails to cite to any facts or authority supporting her position that the letter was sent to induce payment by Plaintiff rather than to inform her of her rights under HUD.  Nothing in the letter contains a statement to make payment more likely, that it was an attempt to collect a debt from Todaro, or that it threatened consequences should Todaro fail to pay.  Nor did it state any amount due.

Plaintiff makes the same arguments here that the plaintiff in *Estep* made, and each argument fails for the same reasons they failed in *Estep*.[2]  For example, in further support of her conclusory proposition, Plaintiff states that the "communications reference the Foreclosure Action, often by case number."  The HUD letter here does not reference the Foreclosure Action by case number.  Even if it did, like the HUD letter in *Estep*, it makes no reference to payment of the amount owed, and "only refers to the foreclosure action in connection with the possible eventual transfer of the property to HUD."  *Estep*, 942 F.Supp.2d at 764.  As explained by the district court in *Estep*, the HUD letter is a requirement under HUD's regulatory scheme and

---

[2] Plaintiff's counsel was also counsel of record in *Estep*.

provides information to an occupant of the requirements for continued occupancy, for example, if the occupant is ill.

Further, in *Estep* the plaintiff unsuccessfully argued that the HUD letter was sent "in connection with the collection of a debt" because it may be construed as an attempt to convince plaintiff to vacate voluntarily and thus save the bank eviction costs.  Here, Plaintiff makes a similar argument in that the HUD letter is an attempt to convince Plaintiff to vacate the property quickly so that Huntington can collect from FHA (and not Todaro).  But there is no allegation in the Amended Complaint that a debt was owed or that the payment by FHA amount(s) to debt collection from Plaintiff.  As in *Estep*, the HUD letter does not indicate a specific date for a move out, and simply indicates that the property had not yet transferred to Huntington and therefore to HUD.  The letter also clearly states that it is HUD, and not the Bank, that requires that no one be living in the property.  The court in *Estep* dismissed such a tenuous argument and noted that the text of the letter "indicates that the sole purpose is to inform the occupant of what he or she needed to do to apply to HUD to remain in the property."  *Estep* at 765-766.  Even a least sophisticated consumer would construe the letter as "provid[ing] the necessary information for applying to HUD to remain on the property."  *Id.* at 765-766.

Finally, as explained by the trial court in *Estep*, important policy considerations weigh against construing a standard HUD notice as debt collection under the FDCPA:  "It makes sense for a mortgagee to assign its noticing obligation under § 203.675 to the law firm familiar with the foreclosure action to ensure compliance with HUD's regulations, which serve a valuable public purpose of their own."  *Id.* at 766.

The Sixth Circuit ultimately affirmed the trial court's decision in *Estep* and held that it was not plausible that an animating purpose of the letter was to induce payment by Estep.  *Estep*,

552 Fed. Appx. 502, 506. Plaintiff has failed to allege or argue any plausible purpose that the animating purpose of the letter was to induce payment by Todaro.

**B. The Notice to Vacate Property and Notice to Leave Premises are not communications in connection with the collection of a debt.**

Likewise, the post-sale January 5, 2016 Notice to Vacate and February 29, 2016 Notice to Leave Premises were sent post-foreclosure and after the sale was confirmed. (See Exs. 3 and 4 to Amended Complaint). Contrary to Plaintiff's misrepresentation, they were not sent "while the Foreclosure was pending," as the Sheriff's sale occurred on November 16, 2016 and was confirmed in December 2016.

Plaintiff also states that because the letters "reference the foreclosure, often by case number," they were in connection with the collection of a debt. Plaintiff fails to identify which communication she is referring to and how one could infer its animating purpose was to collect a debt. The Notice to Vacate simply references that the Property was purchased by the Bank in the foreclosure case. The plaintiff in *Estep* made the same argument which was dismissed by the district court. The court reasoned that including a foreclosure case number in a communication did not bring the letter within the protection of the FDCPA. *Estep*, at 765-766.

Plaintiff further argues that because the February 29, 2016 Notice to Leave Premises specifically mentions that she has paid no rent, it is in connection with the collection of a debt. (Opp. p. 14). Advising Todaro she has paid no rent does not amount to a request for a demand of any payment. It did not threaten any consequence if payment was not received. As explained in *O'Connor*, a cased cited by Plaintiff, a debt is "an amount of money that you owe." *O'Connor* at 31. In *O'Connor*, the letter made clear that the plaintiff would incur future use and occupancy fees, but because there was no existing obligation to pay, and the letter did not reference a pre-existing debt or obligation to pay, the FDCPA was not implicated. *Id.* Here, there was no

10

obligation to pay rent, no lease agreement requiring Todaro to pay rent, no request that she pay rent and thus no debt obligation.   The eviction action and notice were not premised on the failure to pay rent but for occupying the property without color of title.[3]

Plaintiff fails to address any of the cases cited by Defendants that are directly on point and hold that a notice to vacate or leave premises letters are not covered under the FDCPA under the facts here.  *See Hutsler, supra.* at *18-19 (Defendant not collecting a debt when it sent notice to vacate letters, as the letters did not mention an underlying debt); *Dyer v. Select Portfolio Servicing, Inc.*, 108 F.Supp.3d 1278 (M.D. Fl., June 4, 2015) (court relies on *Goodson* and finds communications' animating purpose are not debt collection because they do not reference plaintiff's debt, reflect that it was past due, demand payment or threaten consequences).

Here, there is no mention of an underlying debt, no stated balance owed and no express demand of payment. Nor was Todaro threatened with any consequences should she fail to pay. The letters sent to Plaintiff notifying her that she needed to leave the premises were clearly not part of a strategy to make her pay.

Pursuant to Sixth Circuit precedent in *Grden v. Leiken Ingber & Winters PC,* 643 F.3d 169, 173 (6th Cir. 2011) and *Goodson v. Bank of Am., N.A.*, 600 Fed. Appx. 422 (6th Cir. Jan. 28, 2015) and other applicable case law cited by Defendants, it is clear that the communications at issue were not sent with the purpose of collecting a debt as defined by the FDCPA and Defendants were not required to identify themselves as debt collectors. (See, Motion to Dismiss, pp. 10-13).   As such, Plaintiff has failed to state a plausible claim suggesting Defendants sent the three letters for the purpose of collecting a debt from Plaintiff and for relief under the FDCPA and thus her §1692e and 1692e(11) and claims must fail as a matter of law.

---

[3] Plaintiff cites O.R.C. § 1923.04 as support that Defendants' notice to leave is to be used for non-payment of rent. While it can be used for such circumstances, it is not limited to only situations of non-payment of rent.  It is used to notify a party to leave the premises.

### III.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR ABUSE OF PROCESS

Todaro's allegations that Defendants did not have the right to file the municipal court eviction because there was a stay and thus unlawful, contradicts her allegation that the second eviction action was filed with probable cause.  Indeed, when taking all of Todaro's allegations in total (i.e., the FDCPA allegations), it stands to reason that an abuse of process claim is entirely inconsistent with those allegations.  Plaintiff's reliance on *Nelson v. Am. Power & Light* to support her abuse of process claim is misplaced.  In *Nelson*, the plaintiff alleged the eviction action was proper, but that it was filed for the improper purpose of making the plaintiff pay her electric bills, which the court could not award.  Here, Plaintiff alleges that the eviction action was filed to evict her.  Thus, there was no ulterior purpose alleged like there was in *Nelson*.

Moreover, Plaintiff has failed to allege or set forth any supporting facts with respect to this serious claim. Plaintiff has alleged that the law firm filed a lawsuit on behalf of its client out of hatred, ill-will, or a spirit of revenge.  (Amended Complaint, ¶ 75)  These indiscriminate and unsupported accusations should not be countenanced.  Allegations implicating a lawyer's ethical obligations should be carefully vetted and they were not here.  They are conclusory.

Moreover, even if Todaro alleged that the second eviction action brought against her was filed in proper form and with probable cause; her claim still fails as a matter of law.  To state a claim for abuse of process, it is not enough to allege that the action was filed with a bad intent.  Some willful act beyond the filing of the complaint must be alleged to establish the second element of an abuse of process claim.  A plaintiff must show that the defendant misused the legal process to attempt to gain an advantage outside the legal proceeding.  Plaintiff does not allege a single action beyond the filing of the second eviction proceedings that would constitute a

colorable "perversion" of the litigation process sufficient for an abuse of process claim.  For this reason, it is clear Plaintiff cannot satisfy the required elements of an abuse of process claim.

Finally, an abuse of process claim also fails if it does not allege the attorney "acted with malice [and for a purpose] *completely separate from his client*." *Clellan v. Wildermuth*, 10th Dist. Franklin No. 11AP-452, 2011-Ohio-6390, ¶32; *Wolfe v. Little*, 2d Dist.No. 187718, 2001 Ohio App.LEXIS 1902 (April 27, 2001); *Cox v. Oliver*, 2nd Dist., 2016-Ohio-4575 (June 24, 2016). Plaintiff's Amended Complaint alleges that Defendants' reasons for filing the  municipal court eviction action were the same as their clients; to evict her faster  and "to get revenge against her" for obtaining a stay.  (Amended Complaint, ¶ 75).  Such allegations fail to properly state a claim for abuse of process against an attorney.  For this reason alone, the abuse of process claim must be dismissed.

## IV.  DEFENDANTS' MOTION TO DISMISS DOES NOT REFER TO MATTERS OUTSIDE THE PLEADINGS BECAUSE PLAINTIFF REFERS TO THE DOCUMENT AT ISSUE IN HER FIRST AMENDED COMPLAINT

Plaintiff argues that Defendants "rely" on documents not attached to the Amended Complaint and references the HUD letter attached as Ex. C to Defendants' Motion to Dismiss. Plaintiff's argument is disingenuous.  Plaintiff alleges in the first Amended Complaint that the Notice to Occupant of Pending Acquisition ("HUD Letter") did not identify Defendants as debt collectors.  Plaintiff attached a partial copy of the letter as Ex. 7-1 to the Amended Complaint. However, Plaintiff failed to attach a complete copy of the document with all attachments. Defendants therefore attached a complete copy for this Court's reference.  How can Plaintiff claim it is improper, when she failed to attach a complete copy?  A defendant may attach pertinent documents to a motion to dismiss if the plaintiff fails to do so.  *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), citing *Pension Benefit Guaranty Corp. v. White Consol. Indus.*,

*Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991); 5 WRIGHT & MILLER, § 1327, at 762-63.  "Otherwise, a plaintiff with a legally deficient claim could survive a Motion to Dismiss simply by failing to attach a dispositive document upon which it relied."  *Id.* citing *White Consol. Indus.,* 998 F.2d at 1196.  If referred to in a complaint and central to the claim, documents attached to a Motion to Dismiss form part of the pleadings."  *Armengau v. Cline*, 7 Fed. Apx. 336, 344, 2001 U.S.App.LEXIS 3578 (6th Cir. 2001) citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).  If it adds nothing new and merely fills in the "contours" like here, it may be considered without converting a motion to dismiss to a motion for summary judgment.

In her brief in opposition, Todaro does not dispute that Ex. 7-1 is central to her claim but ignores the fact that she attached an incomplete document.  Defendants attached a complete copy for completeness sake and to fill in the "contours".  Whether the HUD letter that is at issue was attached as a complete copy or not, does not change the substantive argument here:  the HUD letter was not sent for the purpose of collecting a debt and is not covered under the FDCPA.

## V.    CONCLUSION

WHEREFORE, Defendants Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., and Douglas Haessig respectfully request that this Court dismiss Plaintiff's § 1692e, 16962e(11) and 1692f FDCPA claims and abuse of process claim as they fail to state a claim for relief.

Respectfully submitted,


s/Lori E. Brown
**TIMOTHY T. BRICK (0040526)**
**LORI E. BROWN (0071480)**
**GALLAGHER SHARP LLP**
Sixth Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115
(216) 241-5310 Phone
(216) 241-1608 Facsimile
tbrick@gallaghersharp.com
lbrown@gallaghersharp.com
**Attorneys for Defendants Reimer,**
**Arnovitz, Chernek & Jeffrey Co., L.P.A.,**
**and Douglas Haessig**


## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


s/Lori E. Brown
**TIMOTHY T. BRICK (0040526)**
**LORI E. BROWN (0071480)**
**GALLAGHER SHARP LLP**
**Attorneys for Defendants Reimer,**
**Arnovitz, Chernek & Jeffrey Co., L.P.A.,**
**and Douglas Haessig**

15