**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Tina Todaro,** | ) | **CASE NO. 1:16 CV 1480** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Reimer, Arnovitz, Chernek & Jeffrey** | ) | **Memorandum of Opinion and Order** |
| **Co., L.P.A., et al.,** | ) | |
| **Defendant.** | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion to Dismiss (Doc. 10).  This

case alleges a violation of the Fair Debt Collection Practices Act (FDCPA) and abuse of

process. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Tina Todaro filed her First Amended Complaint against defendants Reimer,

Arnovitz, Chernek & Jeffrey Co., L.P.A.(the Reimer Firm) and Douglas Haessig (collectively,

defendants).  The First Amended Complaint alleges the following.

Defendants represented Huntington Bank in a foreclosure action that was and is

1

pending in the Cuyahoga County Court of Common Pleas.[1]  The complaint in the foreclosure

action, filed on February 5, 2015, sought both possession of the secured collateral under a

mortgage agreement, i.e. plaintiff's home, as well as a declaration that a certain sum of money

was due and owing from plaintiff.[2]

On August 13, 2015, the Magistrate Judge in the Common Pleas Court issued a

decision granting the foreclosure, which was approved by the Reimer Firm. It was ordered

that the sheriff pay to Huntington the sum of $112,604.00 plus interest and that a Writ of

Possession of the property be issued.[3]

On September 24, 2015, defendants sent a letter and written communication to

plaintiff. In the letter, defendants failed to identify themselves as debt collectors, and failed to

state that any information given to them would be used for the purpose of debt collection.[4]

---

[1]     Plaintiff requests that the Court take judicial notice of the Common Pleas Court
        docket and documents.  In so doing, the Court has filled in the gaps of the
        sequence of the foreclosure proceeding which have been omitted from, or not
        made clear by, the Amended Complaint.

[2]     Defendants note that the first count of the foreclosure complaint states that
        Todaro had filed bankruptcy and, therefore, the complaint "is an In Rem action
        only and no personal money judgment is being sought..."

[3]     Defendants submit a copy of the judgment of foreclosure which states that due to
        Todaro's filing of a bankruptcy petition, she "was subsequently discharged from
        the indebtedness due and owing to the Plaintiff on its promissory note as set forth
        in its Complaint."  (Doc. 10 Ex. B)

[4]     Although not explained in the Amended Complaint, the September 2015 written
        communication (referred to by defendants as the HUD letter) is a Notice to
        Occupant of Pending Acquisition informing plaintiff that due to the foreclosure,
        the title to the property was expected to transfer to Huntington within 60 to 90
        days and thereafter to the Secretary of Housing and Human Development (HUD).
        The HUD letter informs plaintiff that she may be entitled to continued occupancy
        upon conveyance to HUD if certain requirements are met and upon her written
        request to HUD. (Doc. 10 Ex. C) There is no allegation that plaintiff contacted

Huntington bought the property at a sheriff's sale on November 16, 2015.  The sale was confirmed on December 26, 2015. On January 5, 2016, defendants sent plaintiff a Notice to Vacate Property and issued to plaintiff a writ of possession to evict her from the property. Upon plaintiff's request, the Common Pleas Court stayed execution of the writ of possession and eviction for 90-days beginning on February 17, 2016.  But, on February 29, 2016, defendants left a Notice to Leave Premises on the door of the property which informed plaintiff that she had to leave her home before March 3, 2016, or eviction proceedings would be initiated against her to remove her from the property. Defendants did not disclose in the notice that they were debt collectors attempting to collect a debt. Defendants were attempting to coerce plaintiff and/or illegally circumvent the Common Pleas Court's order of stay.

On March 7, 2016, defendants filed an eviction action for forcible entry and detainer against plaintiff in the Garfield Heights Municipal Court despite the Common Pleas Court's stay order and the fact that defendants had already sought the same relief in that court. Defendants attached to the  eviction complaint in the Municipal Court an exhibit titled Notice to Leave Premises, but that notice contained an additional signature and modified handwriting when compared with the one actually served on plaintiff. On March 8, 2016, the Municipal Court, when it was made aware of the stay issued and ordered by the Common Pleas Court, issued an order for defendants to show cause as to why the eviction proceedings should continue. On March 14, 2016, defendants (and signed by Haessig) responded to the Municipal

---

HUD for the purpose of continued occupancy.

Court that they should be able to proceed regardless of the 90 day stay.[5] Based on defendants'

response, Municipal Court Judge Deborah J. Nicastro permitted the eviction action to proceed

to trial before a Magistrate Judge on April 4, 2016.  As a result of the stress, plaintiff was

hospitalized.  Plaintiff left the hospital early to attend the trial at which defendants appeared

with Huntington to request eviction.  The Magistrate Judge found that the Municipal Court

had no jurisdiction to decide the eviction proceeding in light of the stay issued by the

Common Pleas Court and dismissed it. Judge Nicastro entered a Judgment Entry. After the

hearing, an agent of defendants attempted to speak with plaintiff and apologized for the

wrongful eviction attempt and stated that defendants would not attempt to evict her again

until after the Common Pleas Court stay had ended.

On April 29, 2016, plaintiff filed a motion for an additional 90 day stay with the

Common Pleas Court.  The court granted it on May 12, 2016, and stated in the order that it

was "perplexed by the attempt to sidestep" the stay by the proceeding filed in the Municipal

Court.

Even after the eventual sheriff's sale of plaintiff's home, which was purchased by

Huntington for $32,000, Huntington continued collection efforts and claimed that the debt

owed survived transfer of the collateral. Huntington issued a 1099-A (for 2015) to plaintiff

concerning the home it foreclosed on with the assistance of defendants which stated that she

owed $116,824.41 on the home, that the fair market value was $32,000, and that she remained

---

[5]     Defendants state in their motion that in response to the show cause order, they
        explained that Todaro had ample time to relocate as she had over a year to vacate
        since the foreclosure was initiated, she had not made a payment on the property
        since August 2014, and the property had been sold after the judgment in
        foreclosure.

personally liable for the repayment of the debt even after the sheriff's sale occurred.

Repeatedly throughout 2016, and most recently on May 5, 2016, Huntington issued a

Mortgage Statement to plaintiff stating that she had failed to make payments on the mortgage

as required, even after the sheriff's sale of her home in the foreclosure proceedings, and

claimed that $28,844.45 was still due and owing to Huntington for the missed payments to

date. [6]

According to statements made in both the filings of defendants and tax/mortgage

statements of Huntington, the amount of the mortgage and delinquency was not extinguished

by the foreclosure sale of plaintiff's home, and defendants took steps to collect that money

from plaintiff, including inviting her to call defendants in their January 5, 2016 Notice to

Vacate Property to discuss continued occupancy. In that notice, defendants requested that

plaintiff either vacate her home immediately or contact defendants to discuss occupancy, but

never stated that this communication was from a debt collector or that information given

would be used for the purpose of debt collection.

On June 15, 2016, plaintiff filed the herein action. The Amended Complaint sets forth

two claims: Count One alleges a violation of the FDCPA.  Count Two alleges abuse of

process.

This matter is now before the Court upon defendants' Motion to Dismiss.

**<u>Standard of Review</u>**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can

---

[6]     A copy of the 1099-A is not submitted with the Amended Complaint, but the
       Mortgage Statement is attached.

be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true

and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings,*

*LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ).  In construing

the complaint in the light most favorable to the non-moving party, "the court does not accept

the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted

factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In*

*re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997).  As outlined by the Sixth

Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of
> the claim showing that the pleader is entitled to relief." "Specific facts are not
> necessary; the statement need only give the defendant fair notice of what the ... claim
> is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007)
> (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However,
> "[f]actual allegations must be enough to raise a right to relief above the speculative
> level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at
> 555, 570.  A plaintiff must "plead[ ] factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*
> *v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require

that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face based on factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550

U.S. at 570; *Iqbal,* 556 U.S. at 678.  The complaint must contain "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly,* 550 U.S. at 555.

**Discussion**

6

Defendants argue that both the FDCPA and abuse of process claims fail to state a claim.

**(1) FDCPA**

The Amended Complaint alleges various violations of the FDCPA:

Defendants, falsely and improperly threatened Plaintiff with a second and early eviction action after a stay had been ordered in violation of 15 U.S.C. § 1692d because they engaged in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt.

Defendants falsely and improperly threatened Plaintiff with a second and early eviction action after a stay had been ordered in violation of 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt.

Defendants' (1) service of the Notice to Leave Premises, and (2) filing and maintaining an eviction proceeding before the Municipal Court after a stay had been ordered was in violation of 15 U.S.C. § 1692e because they represented to Plaintiff that she would be evicted by them before May 11, 2016 when they could not legally take any such action, and they used false and deceptive means to collect or attempt to collect a debt.

Defendant [the Reimer firm], in its various letters (Exhibit 1 and Exhibit 2) [7] to Plaintiff, violated 15 U.S.C. § 1692e(11) by failing to identify itself as a debt collector and failing to state that the written communications are from a debt collector.

Defendants in their Notice to Leave Premises, attached as Exhibit 4, failed to identify or disclose on that communication that it was a communication from a debt collector and that information obtained would be used for that purpose, and therefore violated 15 U.S.C. § 1692e(11).

(Am. Compl. ¶¶ 58-62). Attached to the Amended Complaint are four documents: the

September 2015 Notice to Occupant of Pending Acquisition[8] (HUD letter) (Ex. 1),

---

[7]     Exhibit 1 is the Notice to Occupant of Pending Acquisition (the HUD letter) sent by defendants and Exhibit 2 is the Mortgage Statement issued by Huntington.

[8]     A page is missing from the letter as well as the attachments.  Defendants provide the entire document. Plaintiff objects that these materials are "outside the complaint" and cannot be considered without converting this motion to one for

Huntington's May 2016 Mortgage Statement issued to plaintiff (Ex. 2), the January 2016

Notice to Vacate Property (Ex. 3), and the February 2016 Notice to Leave Premises (Ex. 4)

> As plaintiff notes,
>
> The FDCPA broadly prohibits unfair or unconscionable collection methods: conduct which harasses, oppresses or abuses any debtor and any false, deceptive or misleading statements, in connection with the collection of a debt; and it also requires disclosure of certain information.

(Doc. 11 at 7) (citing 15 U.S.C. §§ 1692d through g).  Defendants argue that because plaintiff

challenges the eviction proceedings, and not the underlying foreclosure, which were filed for

possession only and did not seek the collection of a debt or an attempt to collect a debt, the

FDCPA does not apply. In *Estep v. Manley Deas Kochalski, LLC*, 552 Fed.Appx. 502 (6th Cir.

2014), the Sixth Circuit noted that the FDCPA

> prohibits debt collectors from using unfair practices or making deceptive representations in connection with the collection of a debt. *See* 15 U.S.C. §§ 1692c, 1692e, 1692f.  The statutory language imposes two threshold criteria that limit its scope: The FDCPA regulates only the conduct of 'debt collectors' and only communications made 'in connection with the collection of any debt.

Defendants point out that after the judgment in foreclosure, the house was sold at sheriff's

sale and the proceeds of the sale were applied to the amounts owed on the note and mortgage

with any remaining obligation discharged due to plaintiff's bankruptcy case. Nor was there

any request by defendants for plaintiff to pay money and the eviction pleadings did not

request a money judgment.  There was no debt or lien to enforce at the time of the alleged

violations.  As a result, plaintiff was not a "consumer" because she was not obligated to pay

---

> summary judgment.  But, defendants only supplied the entire document of which plaintiff had only provided a portion. Therefore, the Court will not convert the motion.

money in the post-foreclosure eviction action.  *See Bauman v. Bank of America, N.A.,* 808

F.3d (6th Cir. 2015) (To prevail on a § 1692e claim, a plaintiff must establish, *inter alia,* that

"it is a 'consumer' as defined by the FDCPA.")

Defendants point to numerous district court cases in this Circuit which recognize that

the FDCPA does not apply to post-foreclosure eviction proceedings because the proceedings

are not instituted to collect a debt.  For example, in *Bond v. U.S. Bank Natl. Assn.,* 2010 WL

1265852 (E.D. Mich. March 29, 2010), the court stated:

> Finally, defendants assert that they did not violate the FDCPA when they initiated
> summary eviction proceedings against Bond after he had demanded verification of his
> debt. Their action cannot constitute an FDCPA violation because U.S. Bank initiated
> summary eviction rather than foreclosure proceedings. Bond had already surrendered
> the property to the mortgagee in his bankruptcy and his outstanding debts were
> discharged in bankruptcy.
>
> Both the procedural posture and substance of U.S. Bank's state court action against
> Bond establish that the May 19, 2009 summary eviction action did not constitute debt
> collection. First as defendants and the circuit court pointed out, foreclosure, not
> summary eviction, is the appropriate means of collecting on a defaulted mortgage
> debt. Foreclosure was commenced on September 10, 2008 and the sheriff's sale was
> completed on November 5, 2008. As described above, these debt collection activities
> are not the subject of this action. In contrast, summary eviction can only occur after
> title has changed hands and a former debtor remains in possession. At that point, the
> debt collection process has ended and the plaintiff is seeking possession of the
> property rather than monetary damages. U.S. Bank's summary eviction complaint
> confirms that it sought possession rather than monetary damages. Because U.S. Bank
> was not seeking to collect a debt when it initiated the summary eviction proceedings
> against Bond, its actions could not violate the FDCPA.

Likewise, in *Adams v. JP Morgan Chase Bank, N.A.,* 2016 WL 3087701 (E.D.Mich. June 2,

2016) (citing *Bond, supra*), the court stated, "[E]viction activity cannot be the basis for an

FDCA violation because summary eviction is not a part of the debt collection process. The

eviction process begins after debt collection has finished.  The State Court held that he

foreclosure proceedings were complete... Therefore, during any alleged eviction activities, the

defendants were not seeking monetary damages, but rather possession of the property based

on a valid Court judgment of possession.") That court also cited *Bobo v. Trott & Trott,* 2014

WL 555201 (E.D.Mich. Feb. 12, 2014) and *Burks v. Washington Mut. Bank, F.A.,* 2008 WL

4966656 (E.D.Mich Nov. 17, 2008), noting that both held that evictions are not debt

collection activity.  *See also Conlin v. Trott & Trott*, 2014 WL 1746155 (E.D. Mich. April 30,

2014) ("Summary eviction proceedings do not implicate the FDCPA.  A summary eviction

can only occur after title has changed hands and a former debtor remains in possession. At

this point, the debt collection process has ended and the title holder is seeking possession of

the property, rather than monetary damages.") and *Himmelein v. Federal Home Loan*

*Mortgage Corp.,* 154 F.Supp.3d 560 (W.D.Mich. 2015)(The FDCPA was not implicated by

actions taken by a debt collector during the redemption period because the home had been

purchased at foreclosure sale and the debt had been extinguished. While plaintiff had a

statutory right to make payments and redeem the property following the sale, plaintiff had no

obligation to make payments on a debt that no longer existed.  Thus, there was no longer a

debt to enforce.)

Additionally, defendants maintain that plaintiff's claims under § 1692e and 1692e(11)

fail because the communications (i.e., the HUD letter, Notice to Vacate Property, and Notice

to Leave Premises) were not in connection with the collection of a debt and were not designed

to induce payment.

With regard to the HUD letter, plaintiff does not dispute that the letter is a requirement

under HUD's regulatory scheme governing the conveyance of occupied property. *See* 24

C.F.R. § 203.675. The letter notifies the occupant of temporary continued occupancy where

certain requirements are met upon written request to HUD by completion of the Request for

Occupied Conveyance form.  (Doc. 10 Ex. C) In *Estep, supra,*[9] the Sixth Circuit concluded

that a HUD letter informing the plaintiff of HUD's continued occupancy requirements was

not governed by the FDCPA because it was not sent in connection with the defendant's effort

to collect the plaintiff's unpaid mortgage debt. Like *Estep,* the HUD letter merely explained

plaintiff's rights if she wished to reside in the house and, therefore, the letter is not covered

under the FDCPA.

Furthermore, defendants assert the January 5, 2016 Notice to Vacate and the

subsequent Notice to Leave Premises were sent to advise plaintiff that eviction proceedings

were being instituted.  Defendant notes that the Sixth Circuit has recognized that

> For a communication to be in connection with the collection of a debt, an animating
> purpose of the communication must be to induce payment by the debtor. Though the
> animating purposes of the communication is a question of fact that generally is
> committed to the discretion of the jurors, not the court, where a reasonable jury could
> not find that an animating purpose of the statements was to induce payment, summary
> judgment is appropriate.
>
> A review of the language and structure of the two letters... takes into account the
> following factors: (1) the nature of the relationship of the parties; (2) whether the
> communication expressly demanded payment or stated a balance due; (3) whether it
> was sent in response to an inquiry or request by the debtor; (4) whether the statements
> were part of a strategy to make payment more likely; (5) whether the communication
> was from a debt collector; (6) whether it stated that it was an attempt to collect a debt;
> and (7) whether it threatened consequences should the debtor fail to pay.

*Goodson v. Bank of America, N.A.,* 600 Fed. Appx. 422 (6th Cir. 2015) (internal citations

omitted). While plaintiff alleges that the Notice to Vacate "took steps to collect" the debt

which purportedly still existed by  "inviting her to call defendants... to discuss continued

---

9       Plaintiff's attorney herein also represented the plaintiff in *Estep*. The decision of
        the district court was affirmed on appeal.

occupancy," (Am. Compl. ¶ 21), the Notice, like the Notice to Leave Premises, did not

request any payment and was not part of a strategy to make payment more likely. The letters

did not threaten consequences if payment was not made.

For the following reasons, the Court agrees with defendants that the Amended

Complaint fails to state a FDCPA claim.

The allegations in Count One of the Amended Complaint do not relate to the

foreclosure action but to the municipal court eviction proceedings: *See* paragraphs 58-60

(challenging the "second and early eviction" and "eviction proceedings before the Municipal

Court"). Therefore, plaintiff's reliance on *Glazer v. Chase Home Fin. LLC,* 704 F.3d 453 (6th

Cir. 2013)*,* which held that mortgage foreclosure is a debt collection under the FDCPA, is

inapplicable.   Plaintiff argues that the cases relied upon by defendants were decided prior to

*Glazer,* are in conflict with *Glazer*, and were decided based on evictions under Michigan law.

Plaintiff also asserts that two courts in the Southern District of Ohio have held that in Ohio,

underlying evictions can be the basis for FDCPA liability.  Plaintiff's assertions are not

persuasive.

Only *Bond* and *Burk* were decided prior to *Glazer*.[10]  And, the holding in *Glazer* does

not change the analysis in those cases. The remaining cases cited by defendants were decided

after *Glazer.*  In fact, at least two specifically note that *Glazer* did not apply.  *Conlin* ("*Glazer*

is inapplicable because the foreclosure action is not a claim before the Court.  This action

involves a summary eviction proceeding seeking removal of [plaintiff] from the home.") and

*Himmelein* ("As the court in *Glazer* made clear, actions taken by debt collectors leading up to

_____

[10]      Moreover, plaintiff attempts to distinguish only *Bond* and *Burk.*

a foreclosure sale are taken for the purpose of obtaining payment on the underlying debt.  But

upon a foreclosure sale, the mortgage debt is considered paid.") Not only are *Bond* and *Burk*

still on point because the situation in *Glazer* did not apply, but the subsequent cases relied

upon by defendants cited to those cases. Moreover, the remaining cases cited by defendants,

discussed above, and not discussed by plaintiff, are on point and hold that post-foreclosure

eviction activity cannot be a basis for a FDCPA violation. (*See Adams, Bobo, Conlin,*

*Himmelein*) Additionally, in another post- *Glazer* case cited by defendants outside this Circuit

and not addressed by plaintiff, the court acknowledged that *Glazer* and other courts had found

that mortgage foreclosure activity is debt collection to which the FDCPA applies but that

> [T]hese cases are largely inapposite, because the activities alleged to violate the
> FDCPA in this case did not involve a mortgage foreclosure, but letters sent and an
> unlawful detainer action filed *after* the foreclosure was complete and the property
> had been sold. Courts have nearly always found such activities are not debt
> collection activity covered by the FDCPA, even in jurisdictions adopting the rule
> that mortgage foreclosures constitute debt collection.

*Hutsler v. Shapiro & Kreisman, LLC*, 2014 U.S. Dist. LEXIS 74558 (E.D. Mo. June 2, 2014).

*Hutsler* relied on *Bobo*, *supra*:

> In *Bobo*, the plaintiff's property went into foreclosure and was sold at a Sheriff's Sale.
> The purchaser at the sale hired the defendant, a law firm, to commence eviction
> proceedings.  The defendant sent the plaintiff a "notice to vacate" demanding that the
> plaintiff vacate the property, and it later initiated an eviction action in state court. The
> plaintiff filed suit under the FDCPA, contending that the notice to vacate letter
> violated the FDCPA. The court acknowledged that under the Sixth Circuit's
> precedent in *Glazer*, a mortgage foreclosure is a means of collecting debt and is
> therefore debt collection under the FDCPA.  However, it found the same reasoning did
> not apply to post-foreclosure attempts to obtain possession of a property:
>
> > [A]t the time of Defendant's involvement, the mortgage foreclosure process
> > was complete: a Sheriff's sale was held and the redemption period had expired.
> > Defendant's role was to send the notice to vacate and commence eviction
> > proceedings. Defendant was not seeking a deficiency judgment or the payment
> > of money; rather, Defendant demanded that plaintiff vacate the premises.

Under  these circumstances, Defendant was not attempting to collect a debt. The same is true here where defendants were attempting to evict plaintiff after the foreclosure process was complete and plaintiff actually challenges the municipal court eviction proceedings. The Notice to Vacate and the Notice to Leave Premises letters were sent after the foreclosure was complete and the property had been sold at sheriff's sale. Plaintiff attempts to show that a debt still existed by relying on actions taken by Huntington in sending plaintiff a Mortgage Statement and 1099-A.[11]  However, as plaintiff alleges, these communications were sent by Huntington and not defendants.  Nor were they related to the eviction proceedings. As defendants note, "There is no allegation that defendants took any action to preserve the deficiency, to pursue the deficiency, or sent the mortgage statement and 1099-A[12]."  (Doc. 10 at 10) Furthermore, the conduct of Huntington cannot be imputed to defendants.

Plaintiff maintains that two courts from the Southern District of Ohio have held that in Ohio, underlying eviction actions can be the basis for FDCPA liability.  *Nelson v. American Power and Light,* No. 8 CV 549 (S.D. Ohio August 12, 2010), *Montgomery v. Donnett,* No. 5 CV 476 (S.D. Ohio November 29, 2005).  The Court notes that both cases were also decided

---

[11]     The allegations regarding the Mortgage Statement and 1099-A were new with the filing of the First Amended Complaint.

[12]     As stated earlier, plaintiff did not attach a copy of the 1099-A. Defendants refer the Court to the applicable IRS website which shows that Box 5 on a 1099-A states: "If checked, the borrower was personally liable for repayment of the debt." Defendants point out that the instructions for preparing this form state: "Box 5. Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified."  As such, the 1099-A would not have stated that plaintiff remained personally liable for the debt.

14

prior to *Glazer*.  Additionally, the Court agrees with defendants that the cases do not stand for the proposition that eviction activity itself is debt collection, but that under certain circumstances, not present here, it may.  In *Nelson*, defendant had filed an eviction against plaintiff for non-payment of an electric bill. The FDCPA complaint alleged that plaintiff owed past due balances on her electric bill and defendant was demanding payment thereon. The court held that the demand for money for unpaid rent arising out of the dispute over the electric bill was debt collection under the FDCPA.  Likewise, *Montgomery* involved an action for unpaid rent and the eviction notices claimed overdue rent. These cases do not hold that all post-foreclosure eviction proceedings are debt collection.

The Court agrees with defendants that because there was no debt at issue in the eviction action, the FDCPA does not apply to plaintiff's claims arising out the "second and early eviction."

Plaintiff also alleges that defendants violated the FDCPA with the sending of the HUD letter, the Notice to Vacate, and the Notice to Leave Premises because they did not identify themselves as debt collectors.  The Court agrees with defendants that these communications were not in connection with the collection of a debt.

*Estep* held that the HUD letter was not an attempt to collect a debt.  Plaintiff argues that the animating purpose of the herein letter was to induce direct or indirect payment because its purpose was to induce plaintiff to leave her home prematurely which would result in the financial benefit to Huntington in that it could receive payment from Federal Housing Administration (FHA) mortgage insurance earlier. Eviction was a necessary step in order to obtain payment of the underlying mortgage debt from mortgage insurance.  Plaintiff's

assertion, however, that the HUD letter was a way for *Huntington* to collect money from

*FHA*, and not plaintiff, does not support a FDCPA claim against defendants.  Rather, the

district court in *Estep* held that for a communication to be in connection with the collection of

a debt, the animating purpose must be to induce payment by *the debtor*. Plaintiff herein

concedes that the HUD letter must be sent to plaintiff to explain her rights if she wished to

reside in the house.  Nothing in the letter contains a statement to make payment more likely,

or that it was an attempt to collect a debt from plaintiff. Nor did it threaten consequences if

plaintiff failed to pay. Additionally, the letter states that it is HUD, and not Huntington, that

requires that no one be living in the property. The Court agrees with defendants that it is not

plausible that the animating purpose of the HUD letter was to induce payment by plaintiff to

defendants.

     Nor are the Notice to Vacate or Notice to Leave Premises communications in

connection with the collection of a debt.  Both were sent post-foreclosure and after the sale

was confirmed. Contrary to plaintiff's statement, they were not sent while the foreclosure was

pending.  The sheriff's sale was confirmed in December 2015, and the notices were sent in

January and February 2016.  Simply because the Notice to Vacate references the foreclosure

case number and states that Huntington purchased the property at sheriff's sale, there is no

indication that the purpose was to collect a debt.  And while the Notice to Leave mentions

that plaintiff had paid no rent, this does not amount to a request for a demand for payment.  In

fact, because the property had been sold, there was no lease agreement or obligation to pay

rent.  The Notice to Leave states that plaintiff was "occupy[ing] said property without color of

title." The Notice was premised on that and not on the failure to pay rent. As such, the

communications were not sent with the purpose of collecting a debt.

For these reasons, Count One is subject to dismissal.

**(2) Abuse of Process**

Count Two of the Amended Complaint alleges:

Defendants instituted the legal proceedings against Plaintiff in the Municipal Court in proper form by filing a forcible entry and detainer action in the Municipal Court.

Defendants had probable cause for seeking the eviction and filing an action to evict Plaintiff—she was in possession of a home which was sold to Defendants' client at the November 15, 2015 sheriff sale.

Defendants perverted the proceedings in the Municipal Court to attempt to accomplish something that they could not accomplish through the proceedings—namely to pressure the immediate eviction of Plaintiff from the property, and coerce her to move out and to speed up her move out despite being given a stay from the Common Pleas Court, and some more time to vacate the property.

Plaintiff prevailed on Defendants' claims in the Municipal Court. The Municipal Court held that Defendants could not accomplish through the Municipal Court the goals which they sought.

Plaintiff ... was damaged by suffering ill-health effects...

... Defendants were motivated by their hatred, ill will, or a spirit of revenge against plaintiff who had just recently obtained a 90-day stay on her eviction, and defendants and [Huntington] wanted to get revenge against her for doing so.

(Am. Compl. ¶¶ 68-71, 74-75).

An abuse of process claim in Ohio requires plaintiff to satisfy three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Robb v. Chagrin Lagoons Yacht Club, Inc.,* 75 Ohio St.3d 264 (1996) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d 294 (1994)).

17

Defendants argue that plaintiff's allegation that the eviction case was filed with probable cause is contradicted by the other allegations in the Amended Complaint that the eviction action was unlawful due to the stay issued in the Court of Common Pleas.  The Court agrees. Plaintiff alleges in her FDCPA claim that the defendants "falsely and improperly threatened plaintiff with a second and early eviction action after a stay had been ordered...." (¶ 58) and by "filing and maintaining an eviction proceeding before the Municipal Court after a stay had been ordered was in violation of [the FDCPA] because they represented to plaintiff that she would be evicted by them before May 11, 2016 when they could not legally take any such action..."  (¶ 60)[13] For this reason, the claim fails.

Furthermore, as defendants point out, plaintiff must allege a willful act beyond the filing of the complaint to establish the second element of the claim.  *Schiff v. Dickson,* 2011 WL 5870048 (Ohio App.8th. Dist. 2011) (citations omitted) ("[A]buse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order... [T]he mere filing of a complaint cannot constitute an abuse of process.") Here, the proper purpose of an eviction filing is to evict a person from a home which he is occupying without colorable title.  Plaintiff has failed to allege that the municipal court action was filed for some ulterior purpose other than to evict her. Plaintiff does not allege an action other than the filing of the second eviction complaint that would constitute a perversion of the litigation process.  Plaintiff points out that she alleged that defendants perverted the proceedings in Municipal Court by attempting to coerce her to vacate immediately rather than

---

[13]     Plaintiff argues that she has a right to plead claims in the alternative.  But, even assuming plaintiff could contradict her earlier allegations, her claim fails for the second reason stated above.

18

obtain a judgement of eviction. But, plaintiff does not allege a willful act beyond the filing of

the eviction complaint.  This claim fails.

**Conclusion**

For the foregoing reasons, defendants' Motion to Dismiss is granted.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/16/16